[No. B141257. Second Dist., Div. Five. Apr. 20, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ERVIN EUGENE COLE, Defendant and Appellant.

## Counsel

Thomas A. Schaaf, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Lance E. Winters and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WILLHITE, J.***—Defendant Ervin Eugene Cole seeks to appeal from a judgment of conviction entered after a no contest plea to three felony counts. He also admitted two prior serious or violent felony convictions under the

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

"Three Strikes" law and three prior prison terms. With the concurrence of the prosecutor, the superior court represented that it would not sentence him to more than 25 years to life. Further, it would consider striking one or more of his prior serious or violent felony convictions. After a separate hearing, the court declined to strike either of his prior Three Strikes convictions, and sentenced defendant to 25 years to life. Defendant filed a notice of appeal purporting to raise only issues occurring after entry of the plea. (See Cal. Rules of Court, rule 31(d).) He did not secure a certificate of probable cause. (See Pen. Code, § 1237.5; Cal. Rules of Court, rule 31(d).)[1]

On appeal, he raises four claims: (1) he must be allowed to withdraw his plea, because it was "manifestly influenced" by the superior court's promise to consider striking one or more of his prior serious or violent felony convictions; (2) his sentence of 25 years to life constitutes cruel and unusual punishment; (3) the superior court abused its discretion by failing to strike one of defendant's prior serious or violent felony convictions; and, (4) the trial court erred in imposing concurrent sentences on two counts rather than staying them pursuant to Penal Code section 654.

We conclude that defendant's first two claims cannot be raised without a certificate of probable cause. Further, we conclude that his fourth claim is barred by rule 4.412(b). However, considering an issue left undecided in *People v. Young* (2000) 77 Cal.App.4th 827 [91 Cal.Rptr.2d 916], we find his third claim—that the court abused its discretion by failing to strike one of defendant's prior Three Strikes convictions—may be raised without a probable cause certificate. Considering that claim on its merits, we find that the trial court did not err.[2]

PROCEDURAL HISTORY

An information charged defendant with three counts: felony evading (count 1; Veh. Code, § 2800.2, subd. (a)); unlawful driving or taking of a vehicle (count 2; Veh. Code, § 10851, subd. (a)), and felony hit-and-run driving (count 3; Veh. Code, § 20001, subd. (a)). The information also alleged two prior serious or violent felony convictions under the Three Strikes law (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), namely, robbery with use of a firearm, and assault with a deadly weapon.

[1]Hereafter, Penal Code section 1237.5 is referred to as section 1237.5. Also, all further references to rules are to the California Rules of Court.

[2]The question whether the appeal should be dismissed absent a certificate of probable cause was not addressed in the parties' initial briefing. Following a preliminary review of the case, this court requested that the parties brief the issue by supplemental letter brief. They have done so.

The information further alleged three prior prison terms (Pen. Code, § 667.5, subd. (b)).

Defendant initially pled not guilty to all counts and denied the prior convictions. Following various pretrial proceedings, the case was sent out for trial. In the trial court, after recess on the first day of jury selection, the trial court stated outside the presence of the jurors that a trial management conference had been held in chambers. The court asked defense counsel if defendant was contemplating changing his plea. Defense counsel replied: "We had a rather extensive conversation about that during the break. And I think that he wanted to speak with his new wife and think about it overnight." The court stated that it would like an answer at 10:30 the next morning, and recessed the proceedings.

The next morning, the trial court asked defense counsel if there was a disposition. The following proceedings then occurred:

"[Defense counsel]: Well, in a way. [¶] Mr. Cole has decided to plead open to all charges and admit all special allegations to the court, and we're asking that sentencing on this matter be put over for a certain period of time.

"The Court: Mr. Cole, I am satisfied from my discussions with the two attorneys that the . . . crimes charged against you all arise from the same side [sic] of the operative facts. So the maximum punishment the court would otherwise be prepared to impose would be a sentence of 25 years to life, plus an additional term for the . . . priors alleged pursuant to section 667.5(b) unless the People are willing to strike those. [¶] Other than that, I made no promises whatsoever, representations to your lawyer as to what the sentence will be. [¶] Do you understand that?

"The Defendant: Yes.

"The Court: Do you still wish to change your plea at this time?

"The Defendant: No.

"Defense Counsel: No? [¶] You want to go to trial?

"The Defendant: No. [¶] Was I supposed to say 'yes'?

"The Court: This isn't a script here, Mr. Cole.

"The Defendant: I thought I was answering you right.

"The Court: I want you to understand I haven't told your lawyer what the sentence is going to be. It's entirely up to me, and I'm going to wait until I have some more information about you. [¶] I may decide to strike one or more of these strikes. I may decide not to. I don't have complete discretion. My discretion is pretty limited. It's based upon an evaluation of what is called your background, character, and prospects. [¶] So your lawyer is going to have to convince me that I [should] strike one or more of these strikes; but if he does, then I will. But otherwise, it's going to be 25 to life. [¶] Do you understand that?

"The Defendant: Yes.

"The Court: Do you still want to change your plea? Do you still want to change your plea of not guilty to guilty or no contest?

"The Defendant: Yes. Yes. Yes."

The prosecutor then advised defendant of his rights and the consequences of the proposed disposition. The prosecutor stated that this was an "open" plea, meaning that defendant would admit all charges and allegations, and that the maximum possible sentence was 25 years to life. Defendant affirmed that he understood. Defendant pled no contest to all charges, and admitted the priors allegations. Defendant also initialed, signed, and filed with the court a written plea form. It reflected that the maximum possible punishment for the three charged counts was 75 years to life, and described the disposition as an "open plea to court—no promises made."

At defendant's request, the court continued the sentencing hearing for approximately three months. In the interim, defendant filed a written motion, with supporting points and authorities and exhibits, requesting that one or more prior serious felony convictions be stricken. At the sentencing hearing, the court stated that it had read and considered defendant's written motion, and the probation report. The court heard argument from both counsel. Also, on defendant's behalf, the court heard from the victim of defendant's prior conviction of assault with a deadly weapon, and reviewed the probation report from that prior crime. Defendant and his mother also addressed the court. Ultimately, the court declined to exercise its discretion to strike any of the prior Three Strikes convictions. The court sentenced defendant to 25 years to life on each count, to be served concurrently. It struck the three prior prison terms.

Defendant filed a notice of appeal in which he purported to raise "only matters occurring after the entry of the plea which do not challenge the validity of the plea, to wit, abuse of discretion in Court's failure to strike priors pursuant to Penal Code section 1385 and [*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]]." He did not secure a certificate of probable cause.

## STATEMENT OF FACTS

Because we reach the merits of defendant's contention that the trial court abused its discretion in not striking one of his prior Three Strikes convictions, we briefly summarize the evidence underlying the current charges. Our summary is based on the preliminary hearing transcript, and is stated in the light most favorable to the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

On February 21, 1999, Hawthorne Police Officer Michael Shimkus observed defendant driving an Infiniti automobile. The car belonged to two persons, Dolores Nunley and her mother, who did not know defendant and did not give him permission to drive their vehicle. Officer Shimkus followed the Infiniti and activated his lights and siren. Defendant accelerated rapidly on Hawthorne Boulevard, swerving in and out of traffic. He ran a red light, and turned onto 120th Street, then onto Birch Avenue, a residential street. Defendant's speed reached more than 85 miles per hour. Defendant ran three stop signs on Birch, and turned onto Imperial Highway. At a speed of about 45 miles per hour, he swerved into opposing lanes of traffic. At the intersection of Imperial Highway and Freeman, he ran another red light, nearly colliding with several cars. Attempting to turn onto Prairie, defendant collided with another car. The Infiniti spun out of control and rolled over. Defendant fled on foot. He left his passenger, Darlene Wallace, in the vehicle. She had suffered injuries to her back and leg. The driver of the vehicle with which defendant collided was also injured, and later received medical treatment for cervical and lumbar strain. Officer Shimkus pursued defendant, and took him into custody by tackling him.

## DISCUSSION

### A. *The Terms of Defendant's Plea*

Although the prosecutor loosely referred to the disposition as an open plea, as did the written waiver form, in reality the plea was not truly "open." That is, defendant did not face the maximum sentence permissible under the

law for all charges and allegations. Rather, defendant entered his plea under a negotiated disposition. The terms of this disposition, though not expressly spelled out, were nonetheless certainly understood by the parties, and are discernible by clear implication from the record. Because it is essential to the resolution of this appeal, we summarize the nature of the agreement.

First, with the implicit concurrence of the prosecutor, the trial court determined that the three charged crimes arose from the same set of operative facts. The significance of this determination was that it gave the trial court discretion to sentence concurrently. When a three strikes defendant is convicted of more than one current felony, the trial court must sentence *consecutively* for each crime "not committed on the same occasion, and not arising from the same set of operative facts." (Pen. Code, §§ 667, subd. (c)(6), 1170, subd. (a)(6).) However, when the current felonies were not committed on the same occasion or do not arise from the same set of operative facts, the court has *discretion* to sentence *either* consecutively *or* concurrently. (*People v. Lawrence* (2000) 24 Cal.4th 219, 223 [99 Cal.Rptr.2d 570, 6 P.3d 228]; *People v. Deloza* (1998) 18 Cal.4th 585, 591 [76 Cal.Rptr.2d 255, 957 P.2d 945]; *People v. Danowski* (1999) 74 Cal.App.4th 815, 821 [88 Cal.Rptr.2d 471].) Here, the trial court was extending a promise to sentence defendant concurrently on the three charged counts, rather than consecutively. As reflected in the plea and waiver form executed by defendant, the parties and the court believed that defendant's maximum possible punishment for the three counts was three *consecutive* terms of 25 years to life. Thus, by pleading no contest and admitting his prior convictions, defendant reduced his potential exposure on the three charged counts from 75 to 25 years to life.

Second, the parties and the court did not mention any concern that Penal Code section 654 might require staying the sentence on any particular count as opposed to sentencing concurrently. Neither at the time the plea was entered nor at the time the sentence was imposed did defendant object to imposition of concurrent sentences.

Third, also by implication, the People agreed to have the court strike the three prior prison term allegations under Penal Code section 667.5, subdivision (b) should defendant be sentenced to 25 years to life. Each prior prison term carried a potential consecutive sentence of one year. The court initially stated that it would not impose more than 25 years to life "plus an additional term for the . . . priors alleged pursuant to [Penal Code] section 667.5(b)[,] unless the People are willing to strike those." Later, in advising defendant of the consequences of the plea, the prosecutor stated that the maximum sentence that could be imposed was 25 years to life. The prosecutor voiced

no interest in pursuing an additional sentence for the prior prison terms. As noted, the trial court ultimately struck them without objection. Thus, the prosecutor implicitly agreed that if the court were to sentence defendant to 25 years to life, the prior prison term allegations would be stricken.

Finally, essential to defendant's no contest plea was the trial court's representation that within the permissible bounds of its discretion, it would consider striking one or more of defendant's prior convictions under the Three Strikes law at a subsequent hearing. The court made no promise concerning what sentence would be imposed, except that defendant would receive no more than a total sentence of 25 years to life.

Thus, by clear implication from the record, defendant pled no contest with the assurance of concurrent rather than consecutive sentences on the three charged counts; the assurance that if sentenced to 25 years to life, the three prior prison term allegations would be stricken; and the further assurance that his motion to strike his prior serious or violent felony convictions, and obtain a sentence less than 25 years to life, would be given fair consideration under the law at a later hearing.

Having spelled out the plea agreement, we consider the procedural requirements of perfecting this appeal.

B.  *The Requirement of a Certificate of Probable Cause*

■  Generally, under section 1237.5, a defendant may not appeal from a judgment of conviction following a guilty or no contest plea, unless he files with the trial court a written, sworn statement "showing reasonable, constitutional, jurisdictional, or other grounds going to the legality of the proceedings," (§ 1237.5, subd. (a)), and the trial court executes and files "a certificate of probable cause for such appeal with the county clerk" (§ 1237.5, subd. (b)). (See *People v. Mendez* (1999) 19 Cal.4th 1084, 1094-1095 [81 Cal.Rptr.2d 301, 969 P.2d 146]; *People v. Lloyd* (1998) 17 Cal.4th 658, 663 [72 Cal.Rptr.2d 224, 951 P.2d 1191].) In compliance with section 1237.5, the first paragraph of rule 31(d) requires that for the appeal to be perfected, the defendant must "file as an intended notice of appeal the statement required by section 1237.5 of the Penal Code." It further provides that "the appeal shall not be operative unless the trial court executes and files the certificate of probable cause required by that section." (*Ibid*; see *People v. Lloyd, supra,* 17 Cal.4th at p. 663; *People v. Panizzon* (1996) 13 Cal.4th 68, 75 [51 Cal.Rptr.2d 851, 913 P.2d 1061]; *People v. Jones* (1995) 10 Cal.4th 1102, 1106 [43 Cal.Rptr.2d 464, 898 P.2d 910].)

The purpose of section 1237.5 is practical and salutary: "to discourage and weed out frivolous or vexatious appeals challenging convictions following guilty and nolo contendere pleas," and to do so " 'before time and money is spent preparing the record and the briefs for consideration by the reviewing court.' " (*People v. Panizzon, supra,* 13 Cal.4th at pp. 75-76.) The requirements of section 1237.5 and the first paragraph of rule 31(d) must be strictly applied. (*People v. Mendez, supra,* 19 Cal.4th at pp. 1098-1099.) The Supreme Court has disapproved the practice of applying the rule loosely in order to reach issues whose consideration would otherwise be precluded. (*Ibid.*)[3]

The law recognizes an exception to the certificate requirement of section 1237.5. This exception, stated in the second paragraph of rule 31(d), permits an appeal without a probable cause certificate if the appeal "is based solely upon grounds (1) occurring after entry of the plea which do not challenge its validity or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code." It further provides, that "the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds." (See *People v. Mendez, supra,* 19 Cal.4th at p. 1096; *People v. Lloyd, supra,* 17 Cal.4th at p. 664.)[4]

In some cases, a notice of appeal may be filed under the second paragraph of rule 31(d), stating that the appeal is based solely on noncertificate grounds

---

[3]A strict application of section 1237.5 works no undue hardship on defendants with potentially meritorious appeals. The showing required to obtain a certificate is not stringent. Rather, the test applied by the trial court is simply "whether the appeal is clearly frivolous and vexatious or whether it involves an honest difference of opinion." (*People v. Ribero* (1971) 4 Cal.3d 55, 63, fn. 4 [92 Cal.Rptr. 692, 480 P.2d 308].) Moreover, a defendant who files a sworn statement of appealable grounds as required by section 1237.5, but fails to persuade the trial court to issue a probable cause certificate, has the remedy of filing a timely petition for a writ of mandate. (*In re Brown* (1973) 9 Cal.3d 679, 683 [108 Cal.Rptr. 801, 511 P.2d 1153]; *People v. Castelan* (1995) 32 Cal.App.4th 1185, 1188 [38 Cal.Rptr.2d 574]; *People v. Nigro* (1974) 39 Cal.App.3d 506, 511 [114 Cal.Rptr. 213].) Thus, if he complies with section 1237.5, a defendant has ample opportunity to perfect his appeal. Since a guilty or no contest plea to a felony charge "admits all matters essential to the conviction" (*People v. DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872]; Pen. Code, § 1016, subd. 3), it is not unreasonable to insist on such compliance in order to identify frivolous or vexatious appeals. (See *People v. Mendez, supra,* 19 Cal.4th at p. 1094; *People v. Ward* (1967) 66 Cal.2d 571, 575 [58 Cal.Rptr. 313, 426 P.2d 881].)

[4]It may not always be easy to discern whether the notice of appeal is adequate to comply with rule 31(d), second paragraph. (See *People v. Lloyd, supra,* 17 Cal.4th at pp. 664-665 [despite not stating that the appeal was taken on grounds occurring after entry of the plea which do not challenge its validity, in pro. per.'s notice of appeal was held sufficient in stating defendant appealed from the "sentence" and citing rule 31(d)].)

The notice of appeal need not specifically list each issue to be raised. (*People v. Lloyd, supra,* 17 Cal.4th at pp. 664-665.) The appellate court may consider issues or categories of issues not specifically designated in the notice of appeal itself. (*People v. Jones, supra,* 10 Cal.4th at p. 1105 [although notice of appeal stated only that appeal was based on erroneous

(i.e., denial of a Pen. Code, § 1538.5 motion or postplea matters not attacking the validity of the plea). However, the briefing filed in the appeal may raise issues challenging the legality of the proceedings that require a certificate of probable cause under section 1237.5. In such a case, the appellate court "may . . . address noncertificate issues" but "must decline to address certificate issues." (*People v. Mendez, supra,* 19 Cal.4th at p. 1096; see *People v. Jones, supra,* 10 Cal.4th at p. 1112 & fn. 5.) "[T]he defendant may not obtain review of certificate issues unless he has complied with section 1237.5 and rule 31(d), first paragraph." (*People v. Mendez, supra,* 19 Cal.4th at p. 1097.)

In the instant case, defendant's claims, on their face, purport to challenge his sentence. His appeal presents the question: When is a challenge to the sentence actually a challenge to the validity of the plea, requiring a certificate of probable cause under section 1237.5 and rule 31(d), first paragraph? We are certainly not the first court to consider this question. Indeed, on this precise issue the Supreme Court has recently sought to delineate the boundaries of section 1237.5. (See *People v. Lloyd, supra,* 17 Cal.4th at p. 665; *People v. Panizzon, supra,* 13 Cal.4th at pp. 78-79.) Yet, we find that the extant authorities do not fully address a case such as this, where the plea agreement specifies not a particular sentence to be imposed, but a particular sentence not to be exceeded. Our analysis requires a review of the relevant case law, attempting to distill the principles necessary to resolve the application of section 1237.5 to this appeal.

## C.  *An Attack on the Sentence as an Attack on the Plea*

Considerable appellate discussion has been devoted to whether a challenge to the sentence is, in fact, an attack on the plea requiring a probable cause certificate, or whether it is a challenge to postpleas events under rule 31(d), second paragraph. We begin our review with *People v. Ward, supra,* 66 Cal.2d 571, a seminal decision in the interpretation of section 1237.5. Decided before the adoption of the second paragraph of rule 31(d), *Ward* involved a defendant who pled guilty to murder, with no specification of the degree of the crime or the sentence to be imposed. Rather, he waived his right to a jury trial, and the trial court held a six-day nonjury trial, after which it fixed the murder at first degree. (66 Cal.2d at pp. 572-573.) The defendant then waived his right to a jury trial on the penalty, and stipulated to the evidence the court could consider. The court imposed life imprisonment. (*Id.* at p. 573.) The defendant filed a notice of appeal, but did not

denial of Pen. Code, § 1538.5 motion, issue of validity of condition of probation still cognizable on appeal].)

obtain a certificate of probable cause. The Court of Appeal dismissed the appeal. However, the Supreme Court reversed, holding that a probable cause certificate was not required. "We conclude that defendant was not required to comply with the provisions of section 1237.5 where, as here, he is not attempting to challenge the validity of his plea of guilty but is asserting only that errors occurred in the subsequent adversary hearings conducted by the trial court for the purpose of determining the degree of the crime and the penalty to be imposed." (*Id.* at p. 574.) These proceedings on the degree of the crime and punishment, observed the court, were "altogether distinct" from the plea itself. (*Id.* at p. 575.)

Subsequent decisions cited *Ward*, perhaps too broadly, for the proposition that "[t]he requirements of section 1237.5 do not apply to errors alleged to have occurred at sentencing proceedings following the entry of the guilty plea." (*People v. Pinon* (1979) 96 Cal.App.3d 904, 910 [158 Cal.Rptr. 425]; see, e.g., *People v. Delles* (1968) 69 Cal.2d 906, 909-910 [73 Cal.Rptr. 389, 447 P.2d 629]; *People v. Billetts* (1979) 89 Cal.App.3d 302, 307-308 [152 Cal.Rptr. 402].) *Ward*'s exception to the reach of section 1237.5 was formalized by the adoption of the second paragraph of rule 31(d). (See *People v. Kaanehe* (1977) 19 Cal.3d 1, 8 [136 Cal.Rptr. 409, 559 P.2d 1028].)

Lower courts continued to struggle with the question whether an attack purporting to be on the sentence alone actually constituted an attack on the validity of the plea. A line of decisions from the Court of Appeal addressed appeals fashioned on the ground that the sentence violated the state constitutional prohibition against cruel and unusual punishment, relying on *People v. Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697].[5] (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1634-1636 [282 Cal.Rptr. 100]; *People v. Hunt* (1985) 174 Cal.App.3d 95, 107-110 [219 Cal.Rptr. 731]; *People v. Sabados* (1984) 160 Cal.App.3d 691, 694-696 [206 Cal.Rptr. 799].) Each decision held that the appeal attacked the validity of the plea, requiring a certificate of probable cause. In part, the rationale in each was that the issue of whether the punishment was cruel or unusual required an analysis of the full evidence in the case. Yet, because of the guilty plea, such evidence was not fully developed. (See *People v. Lloyd, supra,* 17 Cal.4th at p. 666.)

While these decisions considered cruel or unusual punishment claims, another decision from the Court of Appeal, *People v. McNight* (1985) 171

---

[5] In *Dillon*, the Supreme Court relied on the proportionality analysis of *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921] to find in that case the statutory punishment for first degree murder violated the state constitutional prohibition against cruel or unusual punishment as applied to the specific offense and offender. (*People v. Dillon, supra,* 34 Cal.3d at p. 479.)

Cal.App.3d 620 [217 Cal.Rptr. 393], considered, inter alia, a nonconstitutional claim that the trial court failed to consider mitigating factors. In *McNight*, the defendant pled guilty to three rape charges and admitted a firearm use allegation, in exchange for a dismissal of other charges, and a promise by the prosecution to recommend a sentence of 21 years. (*Id.* at pp. 622-623.) Following imposition of the recommended 21-year sentence, the defendant filed a notice of appeal, and also applied for a certificate of probable cause, which was denied by the trial court. (*Id.* at p. 623.) In the appellate court, he argued that his attorney was ineffective for not presenting mitigating circumstances, and that the trial court erred in failing to consider mitigating circumstances. (*Id.* at p. 622.)

The Court of Appeal rejected his claim that he was not attacking the validity of his plea, and that he therefore did not need a probable cause certificate. The court applied the "substance-of-the-appeal" test: "In determining the applicability of section 1237.5 to a challenge of a sentence imposed after a guilty plea, '. . . the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.] Therefore, the threshold question here is whether appellant's challenge to the sentence imposed pursuant to a plea agreement is in substance a challenge to his guilty plea, and thus subject to the requirements of section 1237.5. The 'substance-of-the-appeal' test requires us to determine if the facts support a challenge to the sentence imposed rather than to [the] validity of the guilty plea, without determining the merits of the appeal itself. [Citation.]" (*People v. McNight, supra,* 171 Cal.App.3d at p. 624.)

The court in *McNight* found that the appeal attacked the validity of the plea: "[A]ppellant received exactly the sentence promised in the agreement. His contention that consideration of mitigating circumstances should have resulted in imposition of a sentence less than the agreed-upon 21 years goes to the heart of the plea agreement itself." (*People v. McNight, supra,* 171 Cal.App.3d at p. 624.) The court distinguished *Ward* as a decision in which "the sentencing procedures were 'altogether distinct' from the defendant's guilty plea . . . ." (*Id.* at p. 625.)

The court also found "[i]t . . . significant that appellant's plea agreement included a specific recommended sentence . . . . If appellant had pled guilty on the sole condition that the other charges against him would be dropped, the trial court could have selected any appropriate sentence without violating the plea agreement. In that situation, the sentencing proceedings probably would not be part of the plea itself, and section 1237.5 requirements might not apply." (*People v. McNight, supra,* 171 Cal.App.3d at p. 625, fn. 4.) Thus, *McNight* suggested that absent a specific negotiated

sentence, section 1237.5 would not apply to an attack on the sentence imposed.

The analysis of *McNight* assumes considerable significance because the Supreme Court, in one of its recent efforts to clarify the scope of section 1237.5, *People v. Panizzon, supra,* 13 Cal.4th 68, adopted *McNight*'s "substance-of-the-appeal" test. Like *McNight, Panizzon* involved the appeal of a defendant who pled guilty in exchange for a specific, negotiated sentence. Without obtaining a certificate of probable cause, he appealed, contending that his sentence violated the federal and state constitutional prohibitions against cruel and unusual punishment. Relying largely on *McNight*, the Supreme Court held that the certificate requirement of section 1237.5 applied. ■ "In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: 'the critical issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*People v. Panizzon, supra,* 13 Cal.4th at p. 76, original italics.) Under this test, in *Panizzon* the appeal attacked the validity of the plea: "Here, by contesting the constitutionality of the very sentence he negotiated as part of the plea bargain, defendant is, in substance, attacking the validity of the plea. For that reason, and consistent with *McNight, supra,* 171 Cal.App.3d 620, we hold that the certificate requirement of section 1237.5 applies." (*People v. Panizzon, supra,* 13 Cal.4th at p. 78.)

The court made clear, however, that its adoption of the substance-of-the-appeal test did not wholly supplant the analysis of *Ward.* Indeed, the court affirmed *Ward*'s continued viability: "We recognize, of course, that *Ward* was decided in the context of the former indeterminate sentencing laws. Under the present determinate sentencing scheme, a plea of guilty to a particular degree of a crime, entered without an agreement as to the specific penalty to be imposed, may require a separate adversary hearing to determine the appropriate sentence. Nonetheless, the broad principle recognized in *Ward,* i.e., that the right of appeal may properly be confined where a plea eliminates the need for further adversary hearings, remains persuasive in the context of determinate sentencing and is fully applicable here." (*People v. Panizzon, supra,* 13 Cal.4th at p. 79, fn. 9.)

After *Panizzon,* the Supreme Court decided *People v. Lloyd,* further refining the scope of section 1237.5. In *Lloyd,* the defendant pled guilty and admitted, inter alia, four prior felony convictions under the Three Strikes

law. Unlike *Panizzon,* he did so with no promise of a particular sentence. At the sentencing hearing, the trial court declared that it had no discretion to vacate the findings of the prior convictions, although it would have considered doing so. (*People v. Lloyd, supra,* 17 Cal.4th at pp. 662-663.) The defendant filed a notice of appeal from the judgment of conviction as to the sentence imposed. In the interim, the Supreme Court decided *People v. Superior Court* (*Romero*), *supra,* 13 Cal.4th 497, holding that the trial court may, on its own motion in the interests of justice, strike prior convictions under the Three Strikes law.

In *Lloyd,* the Supreme Court held that no probable cause certificate was required to perfect the appeal, because the sentence being challenged was not imposed under a plea bargain. Construing *Panizzon,* the court stated, "In *Panizzon,* we recognized that even if it purportedly challenges the sentence only, a defendant's appeal from a judgment of conviction entered on a plea of guilty or nolo contendere must be dismissed in the absence of a statement of grounds by the defendant and a certificate of probable cause by the trial court if, *in substance,* it challenges the validity of the plea. [Citation.] It does so if the sentence was part of a plea bargain. [Citation.] It does not if it was not [citation]—especially so if the claim or claims in question were 'reserved as part of the plea agreement' [citation]." (*People v. Lloyd, supra,* 17 Cal.4th at p. 665.) There being no plea bargain in *Lloyd,* the reasoning of *Panizzon* did not apply. (*Id.* at pp. 665-666.)

Without approving or disapproving them, *Lloyd* distinguished those Court of Appeal decisions—*Zamora, Hunt,* and *Sabados*—which had applied section 1237.5 to appeals in which the sentence was challenged on the ground that it violated constitutional proscriptions on cruel or unusual punishment. In those decisions, *Lloyd* stated, the resolution of the appeal depended on the evidence which might have been presented at trial, evidence that was foreclosed by the defendant's guilty plea. By contrast, in *Lloyd* the issue was purely one of law. (*People v. Lloyd, supra,* 17 Cal.4th at p. 666.)

After *Lloyd,* stating the substance-of-the-appeal test is simple. If the sentence challenged on appeal was part of a plea bargain, then the appeal in substance challenges the validity of the plea. On the other hand, if the sentence challenged on appeal was *not* part of a plea bargain, then the appeal does *not* challenge the validity of the plea, especially if the defendant reserved the right to raise the claim in question.

This formula, so simply expressed, is not so simply applied. What of the plea agreement in which there is not a specific negotiated sentence to be imposed (unlike *Panizzon*), but a specific negotiated sentence not to be

exceeded (unlike *Lloyd*)? Is a challenge to imposition of the negotiated maximum sentence, the terms of which were agreed on by the parties, a challenge in substance to the validity of the plea, or is it a rather a challenge only to postplea events?

We discuss one final decision, *People v. Young, supra,* 77 Cal.App.4th 827, for whatever assistance it can provide. In *Young*, the Court of Appeal addressed this issue in the context of a cruel or unusual punishment claim. In *Young*, the defendant pled no contest to three felony counts, and admitted three prior convictions under the Three Strikes law, with no specific negotiated sentence. Although the defendant's sentencing exposure if convicted at trial would have been 52 years to life, the trial court agreed that following his plea the court would not sentence him to more than 25 years to life. Further, he would have the opportunity to ask the court to strike one or more of his prior convictions. (*People v. Young, supra,* 77 Cal.App.4th at p. 830.) At sentencing , the court declined to strike any prior conviction, and imposed the maximum term of 25 years to life. On appeal, the defendant argued that his sentence constituted cruel and unusual punishment under the state and federal Constitutions. Relying on *Panizzon*, the Court of Appeal dismissed the appeal.

The court held that although the defendant was not attacking a specifically negotiated sentence as did the defendant in *Panizzon*, his appeal was still a challenge in substance to the validity of the plea, because it attacked the maximum term possible under the agreement. (*People v. Young, supra,* 77 Cal.App.4th at p. 832.) The court distinguished *Lloyd* as a case in which the defendant challenged a sentence that was imposed in the absence of a plea bargain. (*Id.* at p. 833.) The court held "that [a] defendant may not challenge the constitutionality of the maximum sentence that was agreed as part of his plea bargain in the absence of a certificate of probable cause." (*Id.* at p. 834.)

The court specifically declined to decide whether, without a probable cause certificate, the defendant could challenge the trial court's exercise of discretion not to strike any of his prior convictions. Having said that, the court observed nonetheless that "a challenge to the maximum sentence to which defendant agreed as part of his plea bargain does challenge the validity of the plea because it challenges one of its material terms." (*People v. Young, supra,* 77 Cal.App.4th at p. 834.)

D.   *The Requirements of Section 1237.5 as Applied to Defendant's Appeal*

Under this somewhat confusing legal patchwork, we consider defendant's appeal. As instructed by the Supreme Court in *Mendez*, we strictly apply the

certificate requirements of section 1237.5 and rule 31(d), first paragraph. Since defendant did not obtain a certificate of probable cause, we may not consider certificate issues. However, since defendant's notice of appeal specified that it is based on noncertificate grounds, we may consider on the merits any noncertificate claim presented. (*People v. Mendez, supra,* 19 Cal.4th at p. 1099.)

### 1.  Contention That Defendant Must Be Allowed to Withdraw the Plea

██  Defendant contends that his decision to plead guilty was "manifestly influenced" by the superior court's promise to consider striking one or more of his convictions under the Three Strikes law. Because the court did not strike any conviction, he must now be allowed to withdraw his plea.[6] By its express terms, this claim attacks the validity of the plea. Thus, it cannot be entertained in the absence of a certificate of probable cause. (See *People v. Sturns* (2000) 77 Cal.App.4th 1382, 1390-1391 [92 Cal.Rptr.2d 547]; *People v. Stubbs* (1998) 61 Cal.App.4th 243, 244-245 [71 Cal.Rptr.2d 423]; *People v. Manriquez* (1993) 18 Cal.App.4th 1167, 1170-1171 [22 Cal.Rptr.2d 779]; *People v. Valenzuela* (1993) 14 Cal.App.4th 837, 840 [17 Cal.Rptr.2d 755].)

### 2.  Contention That the Sentence Constitutes Cruel and Unusual Punishment

Defendant also contends that the sentence of 25 years to life constitutes cruel and unusual punishment under the federal and state Constitutions. We find that both the reasoning of *People v. Panizzon, supra,* 13 Cal.4th at page 79, and the holding of *People v. Young, supra,* 77 Cal.App.4th at page 832, compel the conclusion that this claim is an attack on the validity of the plea.

Defendant argues that *Young* is an unwarranted extension of *Panizzon,* and that we should not follow it. He maintains that *Panizzon* holds only that a constitutional attack on a *specifically agreed upon* sentence is an attack on the validity of the plea itself. When there is no specifically negotiated sentence, a constitutional challenge to the maximum term permissible under the plea agreement in not an attack on an integral part of the plea.

However, this narrow reading of *Panizzon* ignores the clear import of the Supreme Court's reasoning. Under *Panizzon,* the court must scrutinize the

---

[6]Defendant relies on the decision in *People v. Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429]. *Williams* was a People's appeal in which the Supreme Court held that the superior court abused its discretion in striking a prior conviction under the Three Strikes law. Because the defendant had pled guilty in reliance on the superior court's representation that his case might be a proper one in which to strike a prior conviction, the Supreme Court permitted the defendant to withdraw his plea on remand. (*Id.* at p. 164.)

substance of the appeal. That scrutiny requires an examination of the specific bargain entered as well as the specific claim raised on appeal. Regardless of how manifested or phrased, if a challenge to the sentence imposed is in substance a challenge to an integral part of the plea itself, a certificate of probable cause is required. (*People v. Panizzon, supra,* 13 Cal.4th at p. 78.)

A negotiated maximum term in a plea bargain is no less integral than a negotiated specific term. Thus, in the instant case, the court gave its assurance, with the consent of the prosecutor, that for the three charged counts it would sentence defendant to no more than 25 years to life, having determined that the crimes arose from the same set of operative facts. On the face of the arrangement, as contemplated by the court and parties, defendant received the benefit of a reduction in his potential exposure, which was 75 years to life. In turn, the prosecution received the benefit of " 'defendant's vulnerability to a term of punishment.' " (*People v. McNight, supra,* 171 Cal.App.3d at p. 625, quoting *People v. Collins* (1978) 21 Cal.3d 208, 215 [145 Cal.Rptr. 686, 577 P.2d 1026]; see *People v. Panizzon, supra,* 13 Cal.4th at p. 77.) Now, on constitutional grounds, defendant seeks to escape his exposure to a sentence that is within the permissible sentencing range of the understanding. This attempt " 'fundamentally alters the character of the bargain.' " (*People v. McNight, supra,* 171 Cal.App.3d at p. 624, quoting *People v. Collins, supra,* 21 Cal.3d at p. 215.) Such an appeal falls squarely within the rule of *Panizzon* "that a challenge to a negotiated sentence imposed as part of a plea bargain is properly viewed as a challenge to the validity of the plea itself." (*People v. Panizzon, supra,* 13 Cal.4th at p. 79.) Unlike *Lloyd,* where there was no negotiated agreement on the sentencing range (see *People v. Lloyd, supra,* 17 Cal.4th at pp. 662-663), here there was such an agreement, that is, an agreement as to the maximum possible sentence. As in *Young,* without a certificate of probable cause, this court cannot entertain defendant's claim that his sentence violates state and federal constitutional proscriptions against cruel and unusual punishment.

This result is consistent with the reasoning of *Ward,* which maintains is viability under the substance-of-the-appeal analysis. The plea arrangement here contemplated an adversary hearing on whether, under Penal Code section 1385, the trial court should exercise it discretion to strike one or more of defendant's prior Three Strikes convictions. It did not contemplate litigation of a cruel or unusual punishment claim. True, the two issues share certain characteristics. Both require a fact-intensive analysis of the offense and the offender.[7] However, litigation of one does substitute for litigation of the other. The legal claims, despite similarities, have substantial differences.

---

[7]As held in *People v. Williams,* "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own

A contention that a particular statutory punishment is cruel or unusual for the particular offense and offender is not the same as a contention the trial court abused its discretion in choosing among certain prescribed statutory punishments. The ultimate issue under a cruel or unusual punishment analysis is whether the sentence "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d at p. 424.) Thus, for instance, a hearing on a claim of cruel or unusual punishment involves issues generally outside the Penal Code section 1385 analysis. These issues include a "comparison of the challenged penalty with punishment prescribed in the same jurisdiction for different offenses which must be deemed more serious," and "comparison of the challenged penalty to punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision." (*People v. Hunt, supra,* 174 Cal.App.3d at p. 108; see *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510-1571 [84 Cal.Rptr.2d 638].) Also, on a determination that a particular punishment is cruel or unusual, the court has the authority to modify the judgment to reduce the degree of the offense. (*People v. Dillon, supra,* 34 Cal.3d at p. 489.) Of course, when the plea was entered to a specific degree, this would be a direct attack on the plea itself. (See *People v. Sabados, supra,* 160 Cal.App.3d at pp. 695-696.) We believe that it would be "manifestly unfair" to consider a cruel or unusual punishment claim on appeal, when the record presented by the parties in accordance with their agreement did not contemplate such a review. (*Id.* at p. 696.) No adversary hearing was held on that question (cf. *People v. Ward, supra,* 66 Cal.2d at p. 575); the issue was not reserved as part of the plea agreement (see *People v. Panizzon, supra,* 13 Cal.4th at p. 78, fn. 8.)

### 3. *Contention That the Trial Court Abused Its Discretion*

■ Besides his constitutional challenge to the sentence, defendant argues that the trial court abused its discretion in failing to strike one of his prior convictions under the Three Strikes law. The court in *Young* expressly declined to decide whether section 1237.5 applies to such a claim. Considering it here, we conclude that when, as part of the plea agreement, the question of whether to impose the negotiated maximum sentence is left to

---

motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams, supra,* 17 Cal.4th at p. 161.) A constitutional claim of cruel or unusual punishment also requires scrutiny of the offense and the offender. (See *People v. Dillon, supra,* 34 Cal.3d at p. 479.)

the trial court's discretion at an adversary hearing, section 1237.5 does not apply to an appellate claim that the trial court abused its discretion under Penal Code section 1385 in not striking prior convictions.[8]

As noted above, the agreement under which defendant pled guilty contemplated that defendant would receive no more than 25 years to life. The sentence to be imposed would be determined by the trial court's exercise of discretion under Penal Code section 1385 in determining whether to strike one or more of defendant's prior Three Strikes convictions. This issue, in turn, was left to an adversary hearing.

In these circumstances, language in *McNight* counsels against requiring a certificate of probable cause. In *McNight*, the court stated that had the issue of the appropriate sentence been left to the trial court with no recommendation under the plea bargain, "the trial court could have selected any appropriate sentence without violating the plea agreement. In that situation, the sentencing proceedings probably would not be a part of the plea itself, and section 1237.5 requirements might not apply." (*People v. McNight, supra,* 171 Cal.App.3d at p. 625, fn. 4.) While this comment is dictum, the reasoning of *McNight* received the Supreme Court's approval in *Panizzon.* Dictum or not, we do not believe that *McNight*'s view on the subject should be ignored.

Second, the reasoning of *Ward* retains its vitality after *Panizzon* and *Lloyd.* That is, while *Panizzon* adopted the substance-of-the-appeal test, it did not abandon the notion in *Ward* that when the plea arrangement leaves the issue

---

[8]While we hold that section 1237.5 does not apply in these circumstances, we do not agree with defendant's attempt to distinguish *Young* and *Panizzon.* According to defendant, only when the appellant mounts a *constitutional* challenge to imposition of the maximum term under the plea bargain is there a challenge to the validity of the plea. When the claim is simply that the court abused its discretion in sentencing under the bargain, the claim does not challenge the validity of the plea.

However, we do not believe that the reasoning of *Panizzon* is necessarily limited to constitutional challenges. The decision in *McNight*, on which *Panizzon* relied, did not involve a claim that the sentence was cruel or unusual. Hence, it is difficult to see how the scope of *Panizzon* could be so limited.

Rather, we believe the result here is compelled not by a distinction between constitutional and nonconstitutional claims, but by the rationale of *Ward* and *McNight,* filtered through the substance of the appeal test as fashioned by the Supreme Court's reasoning in *Panizzon* and *Lloyd.* The substance of the appeal test requires scrutiny of the precise terms of the plea agreement. If the agreement leaves the determination whether to impose the negotiated maximum sentence to the trial court's discretion at an adversary hearing, an appellate challenge to the trial court's ruling does not attack the validity of the plea. Instead, it simply invites review of the litigation contemplated by the plea agreement. That review, and a possible reversal of the trial court's determination, do not in any way vitiate the parties' bargain.

of punishment to the determination of the court at an adversary hearing, alleged errors at that hearing may be raised without obtaining a certificate of probable cause. Indeed, *Panizzon* expressly recognized this rule. (*People v. Panizzon, supra,* 13 Cal.4th at p. 79, & fn. 9.) It is true, as recognized in *Young,* that a maximum negotiated sentence in a plea bargain is as integral as a specific negotiated sentence. But it is also true that when the question of whether to impose the negotiated maximum is left to the court's discretion at an adversary hearing, an appeal challenging the court's exercise of that discretion is not, in substance, an attack on the validity of the plea. As *Panizzon* observed in construing *Ward,* the rationale of section 1237.5 applies when "a separate adversary hearing is unnecessary and the prosecution need not meet the traditional burden of proof in order to determine the proper penalty to be imposed." (*People v. Panizzon, supra,* 13 Cal.4th at p. 79.) By implication from Panizzon, and by express holding in *Ward,* where adversary proceedings *are* held on the question of punishment, the rationale for limiting the right to appeal under section 1237.5 does not apply.

Third, our holding on this issue is not inconsistent with the holding of *Young.* On this point *Young* is distinguishable, not because that appeal involved a constitutional challenge to the maximum sentence and here we are discussing a nonconstitutional challenge, but because in *Young* the defendant's plea agreement "did not reserve [defendant's] right to challenge the constitutionality of the maximum sentence." (*People v. Young, supra,* 77 Cal.App.4th at p. 834.) Thus, no separate adversary hearing was held on that question. In that context, a constitutional attack on the maximum permissible sentence attacks the validity of the plea, since no provision existed in the plea agreement for considering the constitutionality of the sentence. The result is not the same when the plea agreement contemplates an adversary hearing on the discretionary question of whether to impose the maximum permissible sentence, or whether to strike a prior conviction, thus resulting in a lesser sentence. In these circumstances, while the maximum permissible sentence under the agreement is being challenged, the question of the court's exercise of discretion in imposing that sentence was reserved as a term of the negotiated agreement. (See *People v. Lloyd, supra,* 17 Cal.4th at p. 665; *People v. Panizzon, supra,* 13 Cal.4th at p. 78, fn. 8.)

Finally, the decisions in *Zamora, Hunt,* and *Sabados*—decisions of the Court of Appeal that applied section 1237.5 to claims that the sentence is cruel and unusual—are likewise distinguishable. In these cases, the courts refused to consider the claims, because the records presented were inadequate. The full facts of the case were not presented because the defendant pled guilty, and the prosecution was not put to its proof. (*People v. Zamora, supra,* 230 Cal.App.3d at p. 1635; *People v. Hunt, supra,* 174 Cal.App.4th at

pp. 107-108; *People v. Sabados, supra,* 160 Cal.App.3d at p. 696.) However, in the instant case, unlike *Zamora, Hunt,* and *Sabados,* defendant's no contest plea did not obviate presentation of the circumstances of the crime to the trial court. Rather, it was contemplated that the court would hold a full hearing on all the relevant factors in determining whether to exercise its discretion under Penal Code section 1385. Had the People wished to present additional evidence to put defendant's crimes in their proper context, nothing in the plea arrangement would have precluded it. Thus, unlike a claim of cruel or unusual punishment, it would not be "manifestly unfair" on this record (*People v. Sabados, supra,* 160 Cal.App.3d at p. 696) to consider defendant's claim of abuse of discretion.

For the forgoing reasons, we conclude that section 1237.5 does not apply to defendant's challenge to the trial court's exercise of discretion in failing to strike one of his prior Three Strikes convictions. However, before considering the merits of this claim, we must determine whether defendant's remaining contention may be raised on appeal.

E.  *Rule 4.412(b) as Applied to Defendant's Claim Under Penal Code Section 654*

■    Defendant's final contention is that the trial court erred under Penal Code section 654 by imposing concurrent sentences on counts 2 and 3. Disposing of this contention requires reference not to the certificate requirements of section 1237.5, but to the principle of waiver embodied in rule 4.412(b).

Rule 4.412(b) states: "By agreeing to a specified prison term personally and by counsel, a defendant who is sentenced to that term or a shorter one abandons any claim that a component of the sentence violates [Penal Code] section 654's prohibition of double punishment, unless that claim is asserted at the time the agreement is recited on the record." In the instant case, defendant agreed to "a specified prison term by and through counsel." That specified prison term was the maximum possible sentence of 25 years to life on the three substantive counts, with a dismissal of the prior prison terms. The agreement clearly contemplated that this specific sentence was within the range of permissible sentences. In compliance with the agreement, defendant was sentenced to "that term or a shorter one," within the meaning of rule 4.412(b). The court sentenced defendant to concurrent terms of 25 years to life on the three charged counts, and struck the prior prison terms. "Had defendant been truly surprised at the time of sentencing to find that concurrent terms were being imposed, his remedy would have been to attempt to withdraw his plea on the grounds of a violation of the plea

bargain." (*People v. Hester* (2000) 22 Cal.4th 290, 296 [92 Cal.Rptr.2d 641, 992 P.2d 569].) However, in the trial court defendant raised no argument that Penal Code section 654 barred concurrent sentences. Thus, rule 4.412(b) bars him from raising this issue on appeal. (See 22 Cal.4th at pp. 295-296; *People v. Valenzuela, supra,* 14 Cal.App.4th at p. 841.)

"When a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain." (*People v. Couch* (1996) 48 Cal.App.4th 1053, 1057 [56 Cal.Rptr.2d 220]; see *People v. Otterstein* (1987) 189 Cal.App.3d 1548, 1550, 1551-1552 [235 Cal.Rptr. 108].) Here, as contemplated by the court and parties, defendant faced a potential sentence of 75 years to life on the three charged counts. With the concurrence of the prosecutor, the trial court agreed to reduce that exposure to 25 years to life by sentencing concurrently. Defendant avoided the potentially harsher consequences by entering his plea. He should not be heard to complain that concurrent sentences—a potential consequence which he understood and to which he did not object—were imposed.

F. *The Trial Court Did Not Err in Declining to Strike One of Defendant's Prior Convictions*

■ Finally, we consider the merits of defendant's contention that the trial court erred in not striking one of defendant's Three Strikes convictions.[9] Earlier in this opinion we have summarized defendant's current crimes. As to his prior record, his two previous Three Strikes convictions were for robbery with use of a firearm in 1984, and assault with a deadly weapon in 1992. In addition, he had violated parole five times from 1989 through 1997. He had also been convicted of two misdemeanor offenses (Pen. Code, § 148.9 in 1989 and Pen. Code, § 647, subd. (b) in 1997), and the felony of second degree burglary in 1991.

At the sentencing hearing, the court stated that it had read and considered defendant's written motion, and the probation report of his current crimes. The trial court heard argument from both counsel. Also, on defendant's

[9]Relying on *People v. Benevides* (1998) 64 Cal.App.4th 728 [75 Cal.Rptr.2d 388], respondent contends that a defendant may not seek appellate review of a trial court's discretionary decision under Penal Code section 1385 not to strike a prior conviction. However, we believe that the trial court's exercise of discretion is subject to review under the deferential, abuse-of-discretion standard. (*People v. Myers* (1999) 69 Cal.App.4th 305, 309 [81 Cal.Rptr.2d 564]; see also *People v. Barrera* (1999) 70 Cal.App.4th 541, 553, fn. 7 [82 Cal.Rptr.2d 755].)

behalf, the court heard from the victim of defendant's prior convictions of assault with a deadly weapon, and reviewed the probation report from that prior crime. Defendant and his mother addressed the court. Ultimately, the court declined to exercise its discretion to strike any of the prior convictions. The court sentenced defendant to 25 years to life on each count, to be served concurrently. It struck the three prior prison terms.

The court's comments in denying the motion reflect a thorough, thoughtful consideration of the relevant factors. The court succinctly reviewed "the most recent and definitive statement of the Supreme Court, which does set forth the limits of the court's discretion," an implicit reference to *People v. Williams, supra,* 17 Cal.4th 148. The court considered defendant's oral and written submissions, but observed that "[f]or the last 16 years, you have been continuously in prison or on parole from state prison. In fact, by my count it looks to me you have gone back to prison five times on various parole violations. And that's separate and apart from the additional burglary conviction." The court noted defendant's expression of remorse and the love of his family. However, the court concluded, "I have to say, Mr. Cole, that based upon an analysis of your background, character, and prospects[,] and even considering the fact that the court has a great deal of admiration for you because you did plead guilty and admit all of these allegations against you without any hope of—at least no indication from the court as to what the sentence would be, I have to say that I don't see anything in your future . . . despite your best intentions . . . [except] more of the same."

The court's comments leave no doubt that it fairly exercised its discretion. "On this record, where the trial court considered the relevant criteria, including appellant's lengthy criminal history and the timing and nature of his offenses, none of which reflect well upon his prospects, we find no abuse of discretion in the trial court's refusal to strike one or both of appellant's prior felony convictions." (*People v. Barrera, supra,* 70 Cal.App.4th at p. 555; see *People v. Myers, supra,* 69 Cal.App.4th at p. 310.)[10]

---

[10]Respondent also challenges the trial court's sentence. It contends that defendant's crimes were not committed on the same occasion and did not arise out of the same set of operative facts. Therefore, consecutive sentencing was mandatory. (See *People v. Lawrence, supra,* 24 Cal.4th at p. 233.) Of course, such an argument is contrary to the implicit position taken by the People in the trial court. Respondent does not, however, suggest that we void the negotiated settlement. Rather, respondent asks that we affirm the judgment. Whatever the merits of respondent's sentencing argument might be in the absence of a negotiated settlement, it is not properly raised on appeal when, pursuant to the understanding in the lower court, the People implicitly conceded that concurrent sentences could be imposed. Thus, in accord with what appears to be respondent's ultimate prayer in this case, we affirm the judgment.

## DISPOSITION

The judgment is affirmed.

Grignon, Acting P. J., and Armstrong, J., concurred.

On May 4, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 25, 2001, Brown, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.