Filed 8/28/15  In re E.C. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re E.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>E.C.,<br><br>　　　Defendant and Appellant. | A143780<br><br>(Sonoma County<br>Super. Ct. No. 36127-J) |

After defendant E.C.'s admission of a probation violation, the juvenile court recommitted him to the Department of Juvenile Justice (DJJ).  Hs appellate counsel has raised no issues on appeal from the recommitment order and asks this court for an independent review of the record to determine whether there are any issues that would, if resolved favorably to defendant, result in reversal or modification of the order.  (*People v. Kelly* (2006) 40 Cal.4th 106; *People v. Wende* (1979) 25 Cal.3d 436.)  Defendant was notified of his right to file a supplemental brief, but has not done so.  Upon independent review of the record, we conclude no arguable issues are presented for review, and affirm the order.

## DISCUSSION

Penal Code section 1237.5 generally precludes an appeal from a judgment of conviction after a plea of no contest or guilty unless the defendant has applied for, and

1

the trial court has granted, a certificate of probable cause. There are two exceptions: (1) a challenge to a search and seizure ruling, as to which an appeal is proper under Penal Code section 1538.5, subdivision (m); and (2) postplea sentencing issues. (*People v. Shelton* (2006) 37 Cal.4th 759, 766; see also *People v. Buttram* (2003) 30 Cal.4th 773, 780.) Here, since defendant admitted a probation violation, our review is limited to any postadmission sentencing issues, as defendant's appellate counsel acknowledges. (See *People v. Cole* (2001) 88 Cal.App.4th 850, 868.)

The disposition report stated defendant was first involved with the probation department in November 2009, following two sustained petitions, one for shoplifting and one for attempted burglary of a school. He was found in possession of a blue bandana and a blue cell phone, blue being a gang color. Less than two weeks after being placed on probation, defendant left home without permission and was suspended from school for possessing marijuana. He was declared a ward in December 2009 and ordered to serve 35 to 40 days on community detention. In January 2010, he removed the ankle monitoring bracelet.

After committing an assault at an elementary school, during which the victim's jacket and cell phone were stolen and defendant and others yelled gang slurs and threatened to kill the victim, defendant was spotted and apprehended by the Multi-Agency Gang Enforcement Team. At that time, defendant was intoxicated, gave several false identities, made gang-related threats to the officers, and was wearing a blue web belt. A petition charging felony assault plus a gang enhancement was sustained, and defendant was committed to the Department Commitment Program and Probation Camp.

Defendant fled from the camp and in September 2010, was arrested for another felony assault, in which he and other Sureños gang members attacked a male pedestrian wearing a red hat and attempted to steal his cell phone. This resulted in another sustained felony assault charge and gang enhancement, and in October 2010, defendant was committed to DJJ for a term of nine years. He was released on probation in April 2014.

In October 2014, a probation officer observed defendant walking with his girlfriend and her two children. Defendant was wearing a blue shirt over a white shirt—a

2

violation of the gang terms on his probation. Defendant acknowledged this and said, " 'I have no excuse.' " Defendant stated he wore the shirt because it was the only clean one he had, but acknowledged it was a recent purchase, along with some other shirts. He said he " 'wasn't really thinking.' "

He subsequently admitted violating the terms of his probation.

Defendant had otherwise been in compliance with the terms and conditions of his probation since his release, including 12 clean chemical tests. He had had two jobs. The first he quit because he felt "overwhelmed" with the number of hours he was asked to work, and the second because he was injured on the job and declined to see a physician for worker compensation purposes (his attorney explained defendant's reluctance to make a claim and desire to continue working). Defendant stated he intended to look for additional employment. He continued to reside with his family, and also now had a girlfriend, who, along with her two young children, also lived with them. She was also expecting defendant's child. He claimed he no longer was involved with gang activities and was focused on the new responsibilities in his life. Probation therefore did not recommend recommitment to DJJ, but, expressing concerns about defendant "reverting back to his old life style," recommended community detention for 25 to 35 days plus community service.

At the disposition hearing, the juvenile court expressed incredulousness at defendant's explanation as to why he purchased and wore a blue shirt, violating the gang terms of his probation, and worse, chose to wear it while walking with his girlfriend and her young children, exposing them to the risk of retaliatory gang activity. Given defendant's history and the seriousness of his most recent probation violation, the court asked why it should not recommit him to DJJ. After extended discussion about the need to make responsible choices and assurances by defendant he was focused on his new family and making concerted efforts to distance himself from gang activity, the court asked him one more time at the end of the hearing why he had worn a blue shirt. He responded: "Why? Because [blue is] my favorite color."

Finding previous dispositions had not been effective rehabilitation, the court recommitted defendant to DJJ, the maximum term being nine years. The court explained: "[D]espite a lengthy stay in DJJ, this minor continues to make excuses, blames things on other people, and can't follow a simple rule about no gangs. Why did he buy a blue shirt? 'It's my favorite color.' I think that speaks volumes." As for defense counsel's objection the current violation was not sufficiently serious to warrant a DJJ commitment, the court stated: "I already explained that I find it's a gang violation. It's very serious." The juvenile court made express findings that removal of defendant from his home was necessary due to supervision, behavioral, and gang issues and that reasonable efforts to eliminate the need for removal had been made.

Following the disposition hearing, defendant filed a "Request to Change Court Order," asserting the commitment order did not "specify term or place of confinement, required findings that local options and programs have been exhausted, and sustained petition on which the re-commitment is based, Welfare and Institutions Code 1767.35." The following day, the court issued another commitment order. This one specified defendant was recommitted as "a Probation Returnee per WIC 1767.35" and that "DJJ" was "to house as a probation returnee until 11/07/2015." The court did not make additional express findings, but the record is clear the court was fully aware the spectrum of other options had been tried (probation, electronic monitoring, juvenile hall, camp and nearly three years at DJJ), and concluded none had sufficed. (See *In re Trevor W.* (2001) 88 Cal.App.4th 833, 837 [findings to support imposition of juvenile hall as condition of probation can be expressly or implicitly made]; *In re John S.* (1978) 83 Cal.App.3d 285, 292–293 [express findings to support removal of minor from parent or guardian not required where transcript of hearing showed the " 'substance of a finding' "].)[1]

---

[1] The court also made no express finding that defendant had "available confinement time that is greater than or equal to the length of the return." (Welf. & Inst. Code, § 1767.35, subd. (c).) The record is clear, however, that he did. Accordingly, even if such finding were not implicit from the transcript, any error in failing to make it was harmless. (See *In re Clyde H.* (1979) 92 Cal.App.3d 338, 346–347.) We note the order and commitment forms in the record did not contain as options to be checked by the court

4

A juvenile court's decision to commit a ward to the DJJ will be reversed only if the court abused its discretion. (*In re Jose T.* (2010) 191 Cal.App.4th 1142, 1147.) We must indulge all reasonable inferences in favor of the decision and affirm the decision if supported by substantial evidence. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.) There was no abuse of discretion here. Given defendant's delinquency record and the numerous opportunities he had had to correct his behavior, the court's express and implicit findings were supported by substantial evidence.

Defendant received proper credit for time served, and he was appropriately represented by counsel.

## DISPOSITION

After a review of the relevant record, we find no arguable issues and affirm the disposition order.

---

either of the two findings specified in Welfare and Institutions Code section 1767.35, subdivision (c).

                                                       _____

                                                       Banke, J.

We concur:


_____

Humes, P. J.


_____

Dondero, J.