Filed 7/25/16  P. v. Perry CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA LEE PERRY et al.,<br><br>　　　Defendants and Appellants. | A144901<br><br>(Contra Costa County<br>Super. Ct. Nos. 51314970, 41764893 &<br>51309616) |

Defendants Joshua Perry and Felicia Viscaina appeal from judgments entered pursuant to a negotiated disposition resolving three cases.  In case No. 51309616, they pleaded no contest to first degree burglary (Pen. Code, §§ 459, 460, subd. (a))[1] and admitted several enhancements, including that they had suffered a prior "strike" conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).  In case No. 51314970, they pleaded no contest to voluntary manslaughter (§ 192, subd. (a)) and admitted suffering a prior "strike" conviction (§§ 667, subds. (b)–(i), 1170.12, suds. (a)–(d)).  In case No. 41767893, Viscaina pleaded no contest to receiving stolen property (§ 496, subd. (a)).  In accordance with the terms of the negotiated disposition, the trial court sentenced Perry to a total term of 22 years in state prison and Viscaina to a total term of 25 years in state prison (the upper term doubled for 22 years on the manslaughter conviction, one-third the midterm for one year four months consecutive sentence on the burglary conviction, one-third the midterm for eight months consecutive on the receiving

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

conviction, and one year for the prior strike).  Perry raises a single issue on appeal—that the trial court erroneously failed to hold a *Marsden*[2] hearing on the continued date for sentencing.  Viscaina asks this court for an independent review of the record to determine whether there are any issues that would, if resolved favorably to her, result in reversal or modification of the judgment.  (*People v. Kelly* (2006) 40 Cal.4th 106; *People v. Wende* (1979) 25 Cal.3d 436.)  We conclude there was no error and that are no arguable issues presented for review, and affirm the judgment.

## DISCUSSION[3]

### A. *Perry's Appeal*

On September 11, 2013, the trial court denied Perry's section 995 motion based on the challenged admissibility of a dying declaration wherein the victim identified defendant.  A little over a year later, on November 24, the court was apprised defendant was contemplating pleading to the burglary case, allowing the murder case to go to trial, and codefendant Felicia Viscaina desired to accept a plea deal resolving all her outstanding cases.  Perry's counsel raised the issue of whether there was a factual basis for the out-on-bail/OR enhancement.  The trial court agreed the issue should be resolved, observing counsel "would be engaging in ineffective assistance of counsel by advising his client to admit to something or to plead no contest to something that could not possibly be true."

Ultimately, Perry and Viscaina executed felony advisement and waiver of rights forms, were fully advised of the rights they were waiving by the trial court, and entered no contest pleas to some of the pending charges, in anticipation of the murder case being sent out for trial the following week.  These were "open" pleas, leaving sentencing to the discretion of the court following completion of the anticipated murder trial.  With the

---

[2]  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[3]  Given the issue on appeal, we do not separately set forth the facts and procedural history, instead, reciting the relevant events in connection with our discussion of the issue.

2

express agreement of Perry and Viscaina, the court continued the resolved cases to December 11 for status and to set for sentencing.

On December 10, the parties appeared for trial on the murder case. The defense filed a number of in limine motions, including to exclude evidence under *Miranda*[4] and potentially for severance.

The following day, the court indicated it had not reached even a tentative on the *Miranda* issue, but was likely to grant a severance if the prosecution intended to present evidence of Viscaina's postarrest statements. The prosecutor advised he could, and would, proceed without the problematic statements if that was ultimately the ruling of the court. After a brief recess, and just prior to the court commencing hardship rulings as to potential jurors, the parties advised the court they were continuing to discuss a global resolution of the cases. The court agreed to give the parties a brief opportunity to conclude discussions, but made it clear that once it called up the jury panel and commenced hardship examination, the court would not entertain any plea deal. At the end of the recess, the parties advised the court there was a negotiated disposition.

As to Perry, the prosecutor stated there would be an amendment to count 2 of the information, to charge voluntary manslaughter (§ 192), instead of murder, to which Perry would plead no contest and additionally admit one "strike" allegation, with the expectation he would be sentenced to 22 years (11 years on the manslaughter charge, doubled for the "strike"). The conviction would be of a "violent felony" for which he would receive 15 percent credit for time served. The sentence to be imposed in connection with his prior plea was to run concurrently with the agreed-to sentence on the trial docket. Perry and Viscaina also expressly agreed the trial judge could do the sentencing on all the cases. Perry and Viscaina executed additional felony advisement and waiver of rights forms, were fully advised of the rights they were waiving by the court, and entered no contest to pleas in accordance with the global negotiated disposition.

_____

[4] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

3

The court's voir dire included the following colloquy as to defendant:

"The Court: Again, having reviewed a good deal of materials, in connection with the motions in limine, I'm personally aware that there is a factual basis for the plea. [¶] Mr. Perry, you're charged in [amended] Count Two of the information with a violation of Penal Code section 192(a), voluntary manslaughter, on or about November 8th, 2012 with the victim being Vaughn Walker. [¶] What is your plea to that charge?

"Defendant Perry: No contest.

"[¶] . . . [¶]

"The Court: Mr. Perry, you also have the right to be sentenced within 20 days of today. [¶] Do you agree to waive that right so I could set the sentencing date for February 6th?

"Defendant Perry: Yes, I do."

All parties appeared for sentencing on February 6, 2015. At the outset of the hearing, the trial court stated it had a request that the victim's family members be heard and the matter be continued again for sentencing to March 13 to allow other individuals to attend. Defense counsel both agreed to this proposal.

On March 13, the following exchange occurred, quoted at length given defendant's assertion on appeal:

"The Court: . . . Are all sides prepared to proceed on the sentencing?

"Mr. Caron [prosecutor]: We are, your Honor.

"Mr. Kuluk [Perry's counsel]: On behalf of Mr. Perry, we are not prepared to proceed. [¶] My client's giving me some new information this morning that I need to look into.

"The Court: Ms. Harrigan [Viscaina's counsel].

"Ms. Harrigan: Your Honor, Ms. Viscaina has asked me to continue the sentencing hearing until the later part of April. [¶] I wasn't aware of her request until just now. She has some personal matters that she would like either her family to be able to take care of or perhaps somebody from our office to be able to handle for her, and that's going to take a little bit of time.

"The Court: Mr. Caron, what's the People's position on the request to continue the sentencing?

"Mr. Caron: Your honor, the People would object. [¶] The plea in this case was a number of months ago. A group of people are also here. Ms. Peoples is also here. She's prepared to address the Court, and I believe that we should go forward with sentencing at this time.

4

"[Discussion off record.]

"The Court:  Counsel need time with their clients, let me know.
"Mr. Kuluk:  Yes.  I think we do need a little bit of time this morning.
"The Court:  Let me just give you my thoughts, and that is, that in light of the fact this is a negotiated disposition, I don't really see any reason in continuing the matter further if it was continued to today so that some of the interested parties could be present.  And I don't wish to inconvenience them.  [¶] So I'm likely to proceed with the sentencing but want to give counsel a chance to discuss fully with their clients and make any record that's necessary on the issue.  [¶] So, Mr. Kuluk and Ms. Harrigan, let us know when you are ready.
"Mr. Kuluk:  Thank you.
"Ms. Harrigan:  Yes, your Honor, I will.

"[Brief recess taken.]

"The Court:  Recalling People versus Joshua Perry and Felicia Viscaina.  [¶] Counsels' appearances again please.  [¶] . . . [¶] Mr. Kuluk, what's your position on Mr. Perry's preparedness to proceed with sentencing?
"Mr. Kuluk:  Your Honor, Mr. Perry would like me to file a motion to withdraw his plea.
"The Court:  What's Ms. Viscaina's position, Ms. Harrigan?
"Ms. Harrigan:  Ms. Viscaina is not—does not want to withdraw her plea. . . .

"[The People object to any further continuance. . . .]

"The Court:  Okay.  And before I move back to Mr. Kuluk, can you remind me, was this a package offer?
"Mr. Caron:  It was, your Honor.
"[¶] . . . [¶]
"Mr. Kuluk:  Your honor, there are a number of factors.  I did speak very frankly with Mr. Perry this morning so he understands that if a plea withdrawal was successful, there would be no offers, it would be going to trial.  He does understand that, and he does wish to go to trial in the case.  [¶] Your Honor, I think part of what happened here is when we were in court last February and the decedent's mother addressed the Court, she called Mr. Perry by the name of the third co-defendant Mr. Murray who has—it's always been the position is the killer in this case, the true shooter.  [¶] I think that that realization at that moment was very difficult to stomach.  Mr. Perry did not kill that gentleman and wants to go to trial.
"The Court:  Okay.  Ms. Harrigan, do you wish to be heard on the issue of Mr. Perry's request for a continuance [of] the sentencing so he can file a motion to withdraw his plea which may affect Ms. Viscaina's plea?

5

"Ms. Harrigan: Your Honor, it's our position that Ms. Viscaina has pled and is prepared to go forward with sentencing. . . . [¶] . . . [¶]

"The Court: . . . And Mr. Caron, anything else you want to say?

"Mr. Caron: No, your Honor.

"The Court: Mr. Kuluk, is the matter submitted?

"Mr. Kuluk: Yes, it is.

"The Court: Okay. I'm going to deny Mr. Perry's motion for a continuance at the sentencing date—to file a motion change his plea. [¶] I find the request untimely both as to the continuance and the request suddenly to withdraw a plea four months after the plea was entered. [¶] . . . [¶] The parties have all been planning on the sentencing for today for quite a bit of time. We initially set it for February 6th. So there were two months there with no suggestion of a change of plea. [¶] Another month has gone by, and suddenly the request to change a plea in my view is untimely. [¶] The victim [*sic*] has been brought here today, the victim's family, in order to make additional comments. [¶] And therefore I find the motion to continue the sentencing and the request to file a motion to withdraw the plea untimely. We are going to proceed with sentencing. [¶] As to Mr. Perry, Mr. Perry has pled guilty on docket number 5 –

"Mr. Perry: You want me to tell him no? Somebody is going to tell him no. I'm going to tell him no. I'm not going to take it.

"[Discussion off record.]

"The Court: Back to where I left off. [¶] . . . [¶] Mr. Kuluk, do you waive arraignment on the information for purposes of judgment and sentencing?

"Mr. Kuluk: Yes.

"The Court: Any legal cause why sentencing should not occur?

"Mr. Kuluk: Your Honor, my client is concerned with the Court's denial of our request to pursue his motion to withdraw a plea. [¶] He's telling me that he believes that I was ineffective in the last few weeks since our last sentencing date in not discussing issues with him further and filing a motion to withdraw a plea before today.

"The Court: I do understand your client's position. [¶] I've already ruled on the request for a continuance of the sentencing. So other than—so I don't consider that legal cause because I've already ruled on that. [¶] Any other issues that would prevent us from proceeding with sentencing?

"Mr. Kuluk: Not that I know of.

"[Comments on sentencing by interested persons.]

"The Court: Thank you. [¶] I will need counsel's positions on the outstanding cases for Mr. Perry, two mandatory supervision violations and the open misdemeanor . . . . [¶] . . . [¶] But I'll move on to Mr. Kuluk. On behalf of Mr. Perry, any comments you want to make or any other matters you want me to consider in connection with sentencing?

6

"Mr. Kuluk: Mr. Perry wants to address the Court.

"The Court: Okay. Yes, sir, Mr. Perry.

"Mr. Perry: Your honor, I'm asking to withdraw my plea. I understand I have had a lot of months in order to change my plea. [¶] As the district attorney has pointed out that, yes, we did get all the way to jury selection. And until that point, I was absolutely ready to go to trial. It took me until this moment to figure that out. It shook my confidence for just a moment and I agreed to this plea. [¶] That was my mistake, and since then, I have been trying to get back—trying to withdraw my plea. Yes, this is coming here to your attention right now because once again I haven't—my attorney has not come to see me since that moment. Otherwise this would have been hopefully been addressed months before. [¶] I can't make these—I can't make these moves on my own. He's filed his motions, what not. But this is my decision. This is—I would really like to withdraw my plea.

"The Court: Okay. Is there anything else you want to say about the actual sentencing?

"Mr. Perry: No.

"The Court: Okay. As I've advised earlier, I'm denying the request to continue the sentencing so you can file a motion to withdraw your plea on a number of bases. [¶] First, it has been three months since the pleas were entered after considerable discussion and negotiation between the parties. [¶] At the time I took the pleas, I assured that they were knowing, voluntary, and intelligent, that that was what you wanted to do that day. [¶] I assured there was a factual basis for the plea, that is, that I believed that there's a reason for you to plead guilty to voluntary manslaughter because you in fact committed the crime.

"Audience member: No, he didn't.

"The Court: And because I find your related request to withdraw your plea insubstantial and incredible. We were here February 6th, two months after your plea, to continue the matter until today. There was no mention of withdrawing your plea at that time. [¶] So I don't consider your claim that you have been planning to withdraw your plea for months. [¶] And the motion is untimely at this point, so we're proceeding with sentencing. . . .

"[Sentencing and consideration of restitution.]

"Mr. Caron: Your Honor, at this point then, I would ask that the amount of $7,125.81 of victim restitution be ordered as followed: [¶] . . . [¶] 1,699 dollars payable to Amy and Christopher Calihan . . . .

"The Court: I couldn't hear that. I heard Christopher Calihan. What was her name?

"Mr. Carron: Amy Calihan. [¶] That's $5,040.

"Mr. Perry: Fuck that. I want to fight that too.

"The Court: Mr. Kuluk, your position on the restitution?

"Mr. Kuluk: We just received these documents today. . . .

7

"[Discussion off record.]

"Mr. Perry:  We agreed on Ms. Flowers.
"Mr. Kuluk:  If we could go ahead and set a hearing, we'll be good. . . .

"[Setting of restitution hearing date.]

"The Court:  Okay.  So Mr. Perry . . . .  [¶] As the result of my sentence, you do have the right to appeal from the sentence in this matter.  If you do wish to appeal, you must file a written notice within 60 days of today.  [¶] If you are going to appeal and are unable to pay for an attorney, the Appellate Court will appoint an attorney to represent you at no cost to you.  [¶] And you will have a right to a copy of the transcript and any necessary records from this court for your appeal.  [¶] But what's most important is that you understand that a written notice must be filed within 60 days.  [¶] Do you understand that?
"Mr. Perry:  I do."

One month later, on April 17, 2015, the parties appeared for the restitution hearing.  Perry, still represented by the Alternate Defender's Office, objected to the requested restitution but submitted on the records before the court.  Based on the victim claims, and defendants not submitting any other evidence, the court ordered a total of $7,125.81 in restitution.

What is demonstrably lacking in the record is any "clear indication" by Perry that he wanted his attorney discharged and substitute counsel appointed.  (See *People v. Sanchez* (2011) 53 Cal.4th 80, 89–90 & fn. 3 [*Marsden* hearing is required only when "there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney' " and rejecting argument that expressing desire to make posttrial motion on basis of ineffective representation is the equivalent of a clear indication the defendant wants his attorney relieved and new counsel appointed]; *People v. Barnett* (1998) 17 Cal.4th 1044, 1112 [rejecting Court of Appeal suggestion that where the defendant has made a "colorable claim" of ineffective assistance in posttrial motion, new counsel must be provided].)

While Perry expressed a desire to make a motion to withdraw his plea, he never said anything about wanting Mr. Kuluk removed as counsel.  And while Mr. Kuluk

advised the trial court defendant felt he had been "ineffective" during the time between the two sentencing hearings by "not discussing issues with him further," neither Kuluk nor defendant indicated the posited motion, itself, would be based on alleged ineffective assistance of counsel. (See *People v. Lee* (2002) 95 Cal.App.4th 772, 780 ["[m]ere grumblings" fall far short of clear indication the defendant wanted substitute counsel].) In any event, the reference to ineffective assistance was not tantamount to a clear indication defendant wanted his attorney dismissed.

We do not agree Perry more clearly asked for his attorney to be discharged than did the defendants in *People v. Eastman* (2007) 146 Cal.App.4th 688, *People v. Mendez* (2008) 1616 Cal.App.4th 1362 (*Mendez*), and *People v. Mejía* (2008) 159 Cal.App.4th 1081 (*Mejía*)—all adopting the ineffective assistance of counsel complaint equals a request for new counsel rationale the Supreme Court expressly rejected in *Sanchez*. (*Sanchez, supra,* 53 Cal.4th at p. 90 & fn. 3.) There is no question the facts differ in every case. The salient issue, however, is whether comments by defendant or his attorney provided a clear indication defendant wanted current counsel discharged and new counsel appointed. Nothing Perry or his attorney said here meets that standard.

Nor does *People v. Reed* (2010) 183 Cal.App.4th 1137, assist Perry. In *Reed*, a combination of the defendant's "expressed desire to pursue a motion for new trial based on counsel's incompetence, the fact that defense counsel said, 'I cannot make it for him,' and the context of [the defendant's] prior unsuccessful *Marsden* motions, made it sufficiently clear that [he] was in fact requesting substitute counsel to pursue the motion for new trial." (*Id.* at p. 1145–1146.) None of these circumstances, let alone a confluence of them, occurred here. Moreover, to the extent the appellate court suggested a *Marsden* hearing was triggered merely by the defendant's expressed desire to make a new trial motion on the basis of ineffective assistance of counsel, without more (see *Reed, supra*, at pp. 1146–1147 [citing the subsequently disapproved decisions in *Mendez* and *Mejía*]), the case has been effectively disapproved by *Sanchez*. (*Sanchez, supra*, 53 Cal.4th at p. 90, fn. 3 [expressly identifying *Mendez* and *Mejía* as incorrectly implying

9

a *Marsden* hearing can be triggered by something less than a "clear indication" the defendant " 'wants a substitute attorney' "].)

We need not reach the issue of prejudice. (See *Marsden, supra,* 2 Cal.3d at p. 126.) But even if we did, we would conclude failure to hold a *Marsden* hearing to consider whether new counsel should be appointed to file a motion to withdraw defendant's plea was not prejudicial beyond a reasonable doubt. (*See People v. Washington* (1994) 27 Cal.App.4th 940, 944 [the defendant failed to carry burden of showing a "*Marsden* motion would have been granted had it been heard, or that a more favorable result would have been achieved had the motion in fact been granted"].) The trial court left no doubt that any such motion filed after the first sentencing hearing— when the victim's mother called defendant by another name (of the individual Perry claimed actually pulled the trigger) and after which Perry claimed to have had an epiphany as to the merits of a motion to withdraw his plea—would be denied as both untimely and meritless.[5] Indeed, the court characterized Perry's request to withdraw his plea as "insubstantial and incredible."

### B. *Viscaina's Appeal*

As stated above, Viscaina's counsel on appeal has filed a brief that asks this court to conduct an independent review of the record. Viscaina was notified of her right to file a supplement review, but has not done so.

Section 1237.5 generally precludes an appeal from a judgment of conviction after a plea of no contest or guilty unless the defendant has applied for, and the trial court has granted, a certificate of probable cause. There are two exceptions: (1) a challenge to a search and seizure ruling, as to which an appeal is proper under section 1538.5, subdivision (m); and (2) postplea sentencing issues. (*People v. Shelton* (2006) 37 Cal.4th 759, 766; see also *People v. Buttram* (2003) 30 Cal.4th 773, 780.) Since defendant did

---

[5] As the trial court stated at the time of taking Perry's and Viscaina's no contest pleas to manslaughter, the record, including the preliminary hearing proceedings, supplied ample factual basis for the pleas. Even if Perry did not, as he claims, pull the trigger, there was still an adequate factual basis for the plea as a coparticipant.

not apply for a certificate of probable cause, she is not able to challenge the validity of her plea or any other matter that preceded its entry, except as permitted under the exceptions. (*People v. Cole* (2001) 88 Cal.App.4th 850, 867–868.) Defendant did not make a suppression motion. Accordingly, our review is limited to postplea sentencing issues.

The record shows defendant was ably represented by counsel at all times. She duly executed felony waiver forms in connection with her pleas and was fully advised and voir dired by the trial court in advance of pleading no contest. She expressly waived time for sentencing and was ultimately sentenced in accordance with the terms of the agreed-to, global disposition of her cases. She received total credits of 983 days, and the court properly imposed fines and fees. After a hearing at which Viscaina made no showing in opposition to the claimed restitution, the court ordered a total of $7,125.81 in restitution.

## DISPOSITION

The judgments of conviction are affirmed.

11

 

 

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Margulies, J.