Filed 5/23/24  P. v. Percy CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALFORD DEJOHN PERCY,<br><br>    Defendant and Appellant. | F085950<br><br>(Super. Ct. No. F20906033)<br><br>**OPINION** |

-ooOoo-

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Fresno County.  Heather Mardel Jones, Judge.

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kari Ricci Mueller and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Levy, Acting P. J., Franson, J. and Meehan, J.

Defendant Alford DeJohn Percy sexually abused his stepdaughter for several years starting when she was seven years old.  Defendant pled no contest to multiple sex offenses without a plea bargain.  The trial court sentenced defendant to 52 years eight months to life consisting of consecutive terms of 25 years to life, the middle term on three counts of 10 years, nine years, and eight years, respectively, plus eight months on the final count.  Defendant contends the trial court erroneously imposed the middle terms without making a finding on whether his psychological trauma was a contributing factor to the offenses warranting imposition of the low term under Penal Code[1] section 1170, subdivision (b)(6).

The People respond that defendant's appeal must be dismissed because he did not obtain a certificate of probable cause.  In the alternative, the People argue the trial court did not abuse its discretion in selecting defendant's sentence and any error in the court's sentence was harmless.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      *Factual Summary of the Offenses*[2]

Defendant and Veronica began dating in 2006.  Veronica had a daughter, Susanna, from a prior relationship who was born in 2004.[3]  Defendant and Veronica never legally married but had a son together and lived together.  Susanna identified defendant as her stepfather.

When Susanna was seven years old, defendant was watching pornography on a computer in a back room where they lived.  Defendant took Susanna into the back room

---

[1]      All statutory references are to the Penal Code unless otherwise indicated.

[2]      The limited facts are taken from the preliminary hearing transcript and the police reports as summarized in the probation officer's report.  The parties stipulated to the factual basis for defendant's plea based on the police reports and preliminary hearing transcript.

[3]      Defendant was born on December 31, 1989.

to watch pornography with him. Defendant watched pornography with Susanna at least three times. The third time defendant inserted his fingers into Susanna's vagina.

This began a pattern of defendant sexually abusing Susanna almost weekly until she was 15 years old. Defendant inserted a massager into Susanna's vagina about five times. He also twice inserted a vibrating video game controller into her vagina when she was around 8 or 9 years old. Shortly after he inserted the controller into Susanna, defendant had vaginal intercourse with Susanna. Defendant would perform oral sex on Susanna almost every time he sexually assaulted her and put his mouth on her anus multiple times. He did not have Susanna perform oral sex on him but instead would have her hold his penis. Defendant would also insert his fingers into Susanna's vagina and anus. Susanna did not report defendant because she did not understand what was happening.

Defendant threatened to kill Veronica or Susanna's younger brother if Susanna denied his advances. When Susanna told him no once, he walked away and told Susanna her mother would pay for it. If she refused or denied sex to defendant, he would hit her, sometimes using a belt. Defendant whipped Susanna with a belt and gave her a black eye when she was in fifth or sixth grade. When school officials observed the injury, Susanna lied and said she got the black eye when she fell.

One time, Veronica went to Texas and left defendant home with Susanna. Defendant made Susanna smoke marijuana with him twice. The marijuana made Susanna dizzy. He also made Susanna walk around the house naked and sleep naked.

Defendant and Veronica separated in 2016 after a domestic violence incident.[4] The former couple had shared custody of both children after they separated.

---

[4]     In November 2016, defendant and Veronica got into an argument outside their residence. After they went inside the residence, defendant pushed Veronica to the ground. Defendant put Veronica in a chokehold and threatened to kill her. He began kicking her in the face and upper body. Veronica briefly lost consciousness. Defendant

In 2018, Susanna was asleep on her stomach on her bed when defendant came into her room and proceeded to rip off her clothes. Susanna told defendant she wanted to sleep. Defendant grabbed her hair, shoved her face into the bed and had anal sex with her. Susanna was in pain and crying.

On January 9, 2020, defendant climbed on top of Susanna while she was laying on the couch at his home. Susanna's younger brother was at the home, but he was in a separate room playing video games with the door shut. Defendant pulled down Susanna's shorts and inserted his penis into her vagina. He then put his penis into her anus. Susanna woke up during the assault and pretended to be asleep. She felt paralyzed. The assault took place for approximately 15 to 20 minutes and ended when defendant ejaculated on the couch. After defendant finished, Susanna went into the bathroom and cried. When she came out of the bathroom she continued to cry on the couch.

Susanna was not sexually active with any other partners during defendant's abuse and suspected she got pregnant because defendant never used protection when he had sex with her. Susanna was unaware she had become pregnant as her period is normally very light spotting. On January 11, 2020, Susanna went into labor while at defendant's home. Defendant panicked and told Susanna to deliver the baby in the bathtub. He wanted to deliver the baby at home and then take the baby to a safe surrender location so no one would have to find out Susanna was pregnant. Susanna refused so defendant started to drive her to the hospital. On the way to the hospital, defendant pulled over into a parking lot and tried to convince Susanna to have the baby there. Susanna refused and said, " 'I can potentially die.' "

Defendant resumed driving them to the hospital. In the car, defendant said, " 'I'm driving to my doom,' " " 'I'm done,' " " 'I'm going to prison,' " and " 'I'm never going to

pled no contest to corporal injury on a co-habitant (§ 273.5, subd. (a)) and was placed on probation for three years for this incident (Fresno County case No. F17903017).

see you again.' " Defendant also told Susanna they had to come up with a story so no one would find out he was the father of the baby. He instructed Susanna to say she got pregnant by a boy she met during summer school. Susanna told this story to her mother.

Susanna gave birth to a daughter at the hospital. She was told she was 30 to 39 weeks pregnant when she gave birth. Susanna told Veronica she did not want to keep the baby and pushed to place the baby for adoption. Susanna was worried if she kept the baby, her daughter would become defendant's victim as well.

Susanna was laying on the couch at defendant's home after her daughter's birth. Defendant was rubbing Susanna's leg and said something like, " 'When are we going to get back to that place' " or " 'When are we going back to the time like before?' " Susanna knew defendant was trying to continue to have sexual relations with her. She told defendant she had just had a baby. Susanna hoped this would deter defendant from continually sexually assaulting her.

On September 1, 2020, Veronica and Susanna reported defendant's sexual abuse to the Fresno Police Department. Susanna detailed the abuse in interviews with Fresno police officers.

Fresno Police Detective Cha Thao interviewed defendant on September 4, 2020. When Thao asked defendant if he has kids, defendant identified three: Susanna's younger brother, Susanna, and Susanna's child. Defendant confirmed he had sex with Susanna but said the sex was consensual. He said he possibly blocked the incident. Defendant consented to the police's request to search his cell phone. Defendant's cell phone contained photographs of naked underage females in sexual poses.

### B. *Charges and Plea*

On September 9, 2021, the Fresno County District Attorney filed an information charging defendant with: one count of forcible rape (§ 261, subd. (a)(2); count 1); two counts of sexual intercourse or sodomy with a child 10 years of age or younger (§ 288.7, subd. (a); counts 2 & 3); two counts of oral copulation or sexual penetration

with a child 10 years of age or younger (§ 288.7, subd. (b); counts 4 & 5); one count of forcible sexual penetration of a child under 14 years of age (§ 289, subd. (a)(1)(B); count 6); one count of forcible sexual penetration of a child 14 years of age or older (§ 289, subd. (a)(1)(C); count 7); one count of forcible sodomy on a child 14 years of age or older (§ 286, subd. (c)(2)(C); count 8); and one count of possession or control of child pornography (§ 311.11, subd. (a); count 9). The information further alleged the aggravating circumstance that defendant personally inflicted great bodily injury in the commission of count 1.

On December 14, 2022, defendant pled no contest to all nine counts charged in the information. He also admitted the enhancement allegation. Defendant signed a plea form that included a waiver of rights. The trial court discussed the plea form with defendant and advised defendant of the rights being waived. Neither the plea form nor the court's discussion of the rights waived included a waiver of defendant's right to appeal any sentencing issue. The court calculated defendant's maximum sentence exposure as 120 years four months to life. The court indicated a sentence of 52 years eight months to life if defendant pled to all the counts in the information. The following exchange took place:

> "[DEFENSE COUNSEL]: Your Honor, I advised that this is the Court's indicated. [Defendant] asked me if it's a possibility that he could get less than 52 years. I said that it's possible, but [the court is] indicating it, so it's what you're going to get.
>
> "THE COURT: Yes. So this is my indication and, frankly, given the conduct and your maximum you're actually facing, I think this is a fair number that addresses your conduct. I understand that you are a veteran and that you suffer from disabilities as a result of your service to this country and the Court did take that into consideration when arriving at this sentence, but it's not going to be less than the indicated. I don't want you to have false hope. I want to be straight with you.…"

The court found defendant guilty on all counts and the enhancement allegation to be true pursuant to defendant's no contest plea. The court further found the crimes against

Susanna were a violation of defendant's probation for the 2016 domestic violence incident. The matter was referred to probation to prepare a presentence report.

On March 8, 2023, defendant filed a motion to withdraw his plea. The trial court denied defendant's motion to withdraw his plea on March 9, 2023.

### C.  *Sentence*

Defendant filed a sentencing brief and statement in mitigation asking the trial court to impose the low term and concurrent sentences. The brief stated defendant had experienced psychological, physical or childhood trauma warranting imposition of the low term pursuant to section 1170, subdivision (b)(6)(A). Defendant asserted three factors in mitigation: (1) he was raised in the foster care system and suffered multiple traumatic experiences in that system; (2) he suffered from mental illness from his military service and was found to have a 100 percent service-related disability therefrom; and (3) his age at the time of commission of the offenses. The brief argued the court is obligated to consider a defendant's qualifying service-related disabilities as mitigating circumstances in making discretionary sentencing choices, and cited sections 1170.9 and 1170.91, and *People v. Panozo* (2021) 59 Cal.App.5th 825. Defendant attached exhibits to the brief including: (1) an email from a clinical social worker attesting to defendant's experiences in the foster care system; (2) certificates of defendant's release or discharge from active military duty; and (3) excerpts of defendant's records from the Veteran's Center detailing his counseling for posttraumatic stress disorder (PTSD) and other mental health issues.

The probation officer's report listed three aggravating factors related to defendant: defendant had engaged in violent conduct that indicates a danger to society (Cal. Rules of Court, rule 4.421(b)(1));[5] defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings were numerous or of increasing seriousness

---

[5]    All further rule references are to the California Rules of Court.

(rule 4.421(b)(2)); and defendant was on probation or parole when the crime was committed (rule 4.421(b)(4)). That defendant was under 26 years of age at the time of the offenses was the sole mitigating factor identified (rule 4.423(b)(6)). Defendant had no juvenile record, but his adult criminal record included: driving under the influence (Veh. Code, § 23152, subd. (b)) in 2011; driving while license was suspended or revoked (Veh. Code, § 14601.2, subd. (a)) in 2016; and the domestic violence (§ 273.5, subd. (a)) against Veronica in 2016. With respect to counts 6 through 8, probation recommended the sentences be served consecutively because the crimes were committed against the same victim on separate occasions (§ 667.6, subd. (d)). A total sentence of 132 years eight months to life was recommended.

Appended to the probation officer's report was a 2018 probation officer's report regarding defendant's 2016 domestic violence conviction. Defendant self-reported diagnoses of PTSD, depression, insomnia, and bipolar disorder. He had attempted suicide twice. Defendant was receiving mental health services through the Veterans Administration including counseling and group education for PTSD.

On March 9, 2023, the trial court held a sentencing hearing. The court had received and reviewed the probation officer's report, defendant's sentencing brief and statement in mitigation, and a letter from the victim. Defense counsel reported the probation officer had failed to note defendant was in Veteran's Treatment Court and had completed a batterer's intervention program. Defense counsel asked the court to consider defendant's time in the military, service-related disabilities, his age, and his upbringing in the foster care system. Defense counsel further noted defendant's remorse and interest in keeping the victim's family from a prolonged proceeding.

The prosecutor argued defendant failed to mention he continued to sexually abuse his stepdaughter while he was in the Veteran's Treatment Court. The prosecutor also contested defendant's representation he was raised in the foster care system and asserted this was untrue according to Veronica.

The trial court heard victim impact statements from Susanna and Veronica. The court then discussed the rationale for its sentence:

"I don't believe any aggravating factors were admitted, but I can and do find that defendant was on probation at the time the crime was committed because he did admit his probation violation and that based on this Court's review, he did not have any juvenile delinquency proceeding, but he did have prior convictions as an adult and those include the case in which he was on probation for. While they weren't numerous, adding these crimes together they have become numerous and of course increase in seriousness. There was no aggravated factor admitted and the Court, on [its] own, can't find that the defendant engaged in violent conduct, so I am going to strike that aggravating factor on the sentencing report. Although, the conduct in this case would qualify certainly.

"The Court considered California Rule of Court 4.423, circumstances in mitigation and I will note a few factors in mitigation. The sentencing report notes that defendant was under 26 years of age at the time he began his crimes. He's now 33. Yeah, 33.

"I'll also note that the Court, after reading the sentencing brief— and I already knew this because this was part of the discussion at the time the Court made it's indicated, but that defendant did have prior military service. So the Court took those into consideration. Let's be clear, defendant's maximum that he was facing pleading to the sheet as he did was 136 years and, I think, 8 months. Let me get back to my count over here. I'm sorry, 132 years, 8 months was his maximum and that is in fact what probation is recommending. So the Court did take into account those circumstances in mitigation in making it's indicated."

The trial court sentenced defendant to 52 years eight months to life as follows: an indeterminate term of 25 years to life on count 1; a determinate term consisting of the middle term of 10 years on count 6; the middle term of eight years on count 7; the middle term of nine years on count 8; and eight months (one-third of the middle term) on count 9, all to be served consecutively to count 1. The court imposed concurrent terms on the remaining counts: 25 years to life each on counts 2 and 3, and 15 years to life each on counts 4 and 5.

Defendant filed a timely notice of appeal without a certificate of probable cause.

9.

## DISCUSSION

### I. Certificate of Probable Cause

The People argue defendant's appeal must be dismissed because he did not obtain a certificate of probable cause in accordance with section 1237.5. Defendant responds no certificate of probable cause is required because he is not attacking his plea bargain since he never entered any plea bargain. Defendant further argues he is not attacking the trial court's authority to impose the middle term on counts 6, 7 and 8, but is instead challenging the court's purported lack of adequate findings and its failure to exercise the discretion vested in it.

#### A. *Governing Legal Principles*

Section 1237.5 specifically provides: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

"Notwithstanding the broad language of section 1237.5, it is settled that two types of issues may be raised in a guilty or nolo contendere plea appeal without issuance of a certificate: (1) search and seizure issues for which an appeal is provided under section 1538.5, subdivision (m); and (2) issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed." (*People v. Panizzon* (1996) 13 Cal.4th 68, 74 (*Panizzon*).)[6] "The purpose for

---

[6] Defendant indicated in his opening brief and notice of appeal he was appealing pursuant to rule 8.304(b). Rule 8.304(b)(2) provides that a defendant appealing from a judgment of conviction after a plea of guilty or nolo contendere need not file a written

10.

requiring a certificate of probable cause is to discourage and weed out frivolous or vexatious appeals challenging convictions following guilty and nolo contendere pleas. [Citations.] The objective is to promote judicial economy 'by screening out wholly frivolous guilty [and nolo contendere] plea appeals before time and money is spent preparing the record and the briefs for consideration by the reviewing court.' " (*Id*. at pp. 75–76.)

In *People v. Ward* (1967) 66 Cal.2d 571, after the defendant pled guilty to murder the trial court held proceedings to determine the degree of the crime and the penalty to be imposed. The trial court found the murder to be in the first degree and sentenced the defendant to life imprisonment. (*Id*. at p. 572.) The defendant filed a notice of appeal but did not obtain a certificate of probable cause. (*Id*. at p. 573.) Our Supreme Court denied the prosecution's motion to dismiss the appeal for failing to comply with section 1237.5. (*Id*. at p. 577.) The court concluded "defendant was not required to comply with the provisions of section 1237.5 where, as here, he is not attempting to challenge the validity of his plea of guilty but is asserting only that errors occurred in the subsequent adversary hearings conducted by the trial court for the purpose of determining the degree of the crime and the penalty to be imposed." (*Id*. at p. 574.)

In *Panizzon*, the defendant pled no contest to various felony counts and agreed to a sentence of life without the possibility of parole plus 12 years pursuant to a plea bargain. (*Panizzon*, *supra*, 13 Cal.4th at p. 73.) In exchange for the defendant's plea, the prosecution agreed to dismiss several additional counts. (*Ibid*.) Defendant's plea agreement included a waiver of the right to appeal his sentence. (*Id*. at p. 82.) After the trial court sentenced the defendant in accordance with the plea bargain, the defendant

statement under section 1237.5 for a certificate of probable cause where the appeal is "based on or from: [¶] (A) The denial of a motion to suppress evidence under Penal Code section 1538.5; or [¶] (B) The sentence or other matters occurring after the plea or admission that do not affect the validity of the plea or admission; or [¶] (C) An appealable order for which, by law, no certificate of probable cause is required."

sought to appeal his sentence as disproportionate to his codefendants' sentences in violation of the federal and state constitutional prohibitions against cruel and unusual punishment. (*Id*. at pp. 73–74.) The People requested dismissal of the defendant's appeal for failure to obtain a certificate of probable cause. (*Id*. at p. 74.) Our Supreme Court applied the following principles to its analysis: "In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: 'the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*Panizzon*, at p. 76.) In rejecting the defendant's argument his appeal was based on postplea errors, the court held that "[w]hile a trial court's error in making certain decisions after a plea may give rise to challenges that do not require compliance with section 1237.5, all the trial court did here was to sentence defendant in accordance with the previously entered plea.… '[T]he crucial issue is *what* the defendant is challenging.' [Citation.] Here, by contesting the constitutionality of the very sentence he negotiated as part of the plea bargain, defendant is, in substance, attacking the validity of the plea," and was therefore subject to the certificate requirement of section 1237.5. (*Panizzon*, at p. 78.)

Two years after *Panizzon*, the Supreme Court considered whether a certificate of probable cause is required where the defendant pleads no contest but not pursuant to a plea bargain. In *People v. Lloyd* (1998) 17 Cal.4th 658, the defendant pled no contest to robbery without a plea bargain. (*Id*. at p. 661.) The defendant reserved the right to appeal whether the trial court had the authority to vacate his prior strike convictions, which our Supreme Court concluded it does in *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 while the defendant's appeal was pending. (*Lloyd*, at p. 662.) The Supreme Court held the defendant in *Lloyd* was not required to obtain a certificate of

12.

probable cause because he was not challenging the validity of the plea itself but instead challenged the trial court's postplea error in concluding it did not have the authority to vacate his prior strikes. (*Id*. at p. 665.) The court explained its rationale: "In *Panizzon*, we recognized that, even if it purportedly challenges the sentence only, a defendant's appeal from a judgment of conviction entered on a plea of guilty or nolo contendere must be dismissed in the absence of a statement of grounds by the defendant and a certificate of probable cause by the trial court if, *in substance*, it challenges the validity of the plea. [Citation.] It does so if the sentence was part of a plea bargain. [Citation.] It does not if it was not [citation]—especially so if the claim or claims in question were 'reserved as part of the plea agreement[.]' " (*Ibid*.) Because there was no plea bargain, the reasoning of *Panizzon* did not apply. (*Lloyd*, at pp. 665–666.)

From this case law, appellate courts gleaned that to determine if a certificate of probable cause is necessary, "the court must scrutinize the substance of the appeal. That scrutiny requires an examination of the specific bargain entered as well as the specific claim raised on appeal. Regardless of how manifested or phrased, if a challenge to the sentence imposed is in substance a challenge to an integral part of the plea itself, a certificate of probable cause is required." (*People v. Cole* (2001) 88 Cal.App.4th 850, 867–868 (*Cole*).) The *Cole* court held "that when, as part of the plea agreement, the question of whether to impose the negotiated maximum sentence is left to the trial court's discretion at an adversary hearing, section 1237.5 does not apply to an appellate claim that the trial court abused its discretion under … section 1385 in not striking prior convictions." (*Id*. at pp. 869–870.) The court explained that "while *Panizzon* adopted the substance-of-the-appeal test, it did not abandon the notion in *Ward* that when the plea arrangement leaves the issue of punishment to the determination of the court at an adversary hearing, alleged errors at that hearing may be raised without obtaining a certificate of probable cause." (*Id*. at pp. 870–871.)

In *People v. Buttram* (2003) 30 Cal.4th 773, our Supreme Court found the reasoning of *Cole* persuasive in determining whether the defendant could attack the trial court's sentencing decision as an abuse of discretion without obtaining a certificate of probable cause after the defendant pled guilty in exchange for an agreed maximum sentence. The court distinguished cases like *Panizzon* where the defendant agreed to a specific sentence from cases where the defendant only agreed to a maximum sentence: "When the parties negotiate a *maximum* sentence, they obviously mean something different than if they had bargained for a *specific* or *recommended* sentence. By agreeing only to a maximum sentence, the parties leave unresolved between themselves the appropriate sentence within the maximum." (*Buttram*, at p. 785.) In *Buttram*, the record showed "the bargain contemplated separate sentencing proceedings in which the appropriate sentencing choice, within the agreed maximum term, would stem from adversarial debate between the parties and the exercise of sentencing discretion by the trial court." (*Id*. at p. 787.) While the trial court in *Buttram* indicated at the time of the plea that it would consider a sentence below the maximum, the court ultimately imposed the maximum agreed sentence but only after considering a presentence report and holding a sentencing hearing where both sides argued for a particular disposition. (*Ibid*.) In determining the defendant could still challenge the trial court's exercise of discretion in selecting his sentence without a certificate of probable cause, the Supreme Court concluded that "when the claim on appeal is merely that the trial court abused the discretion the parties intended it to exercise, there is, in substance, no attack on a sentence that was 'part of [the] plea bargain.' " (*Id*. at p. 786.) The Supreme Court agreed with the *Cole* court's reasoning that " '[b]y implication from *Panizzon*, and by express holding in *Ward*, where adversary proceedings *are* held on the question of punishment, the rationale for limiting the right to appeal under section 1237.5 does not apply.' " (*Buttram*, at p. 787.) Accordingly, the Supreme Court held that "absent contrary provisions in the plea agreement itself, a certificate of probable cause is not required to

14.

challenge the exercise of individualized sentencing discretion within an agreed maximum sentence." (*Id*. at p. 790.)

After *Buttram*, courts continued to grapple with the "nuanced question" of whether a defendant's appeal attacks the validity of the plea itself requiring a certificate of probable cause or challenges postplea errors not subject to section 1237.5. (*People v. Stamps* (2020) 9 Cal.5th 685, 696.) It has been held that a certificate is required where the plea bargain contains a sentence "lid" that the parties agree is the maximum sentence the trial court may impose, and the defendant challenges the lid sentence as violative of the prohibition against multiple punishment under section 654. (*People v. Shelton* (2006) 37 Cal.4th 759, 763.) The "inclusion of a sentence lid implies a mutual understanding and agreement that the trial court has authority to impose the specified maximum sentence and preserves only the defendant's right to urge that the trial court should or must exercise its discretion in favor of a shorter term." (*Ibid*.) On the other hand, no certificate was required where the defendant was sentenced on the charges remaining after a plea agreement and the defendant challenged the trial court's imposition of the upper term based on aggravating factors not found true by a jury in violation of *Cunningham v. California* (2007) 549 U.S. 270. (*People v. French* (2008) 43 Cal.4th 36, 45–46.)

In summary, the "law draws a line between pleas in which the parties agree that the court will impose a specific, agreed-upon sentence, and pleas in which the parties agree that the court may impose any sentence at or below an agreed-upon maximum. A certificate of probable cause is required for the former [citations], but not the latter (except where the defendant challenges the legal validity of the maximum sentence itself)." (*People v. Hurlic* (2018) 25 Cal.App.5th 50, 55–56.) While "a challenge to the court's authority to impose an agreed upon maximum sentence is a challenge to the validity of the plea requiring a certificate of probable cause, … a challenge to the trial court's exercise of individualized sentencing discretion within an agreed maximum

15.

sentence does not require a certificate of probable cause because it does not challenge the trial court's authority to impose the upper term, i.e., it does not attack the validity of the plea agreement but instead attacks the court's exercise of discretion permitted by the agreement." (*People v. Rushing* (2008) 168 Cal.App.4th 354, 359–360; see also *People v. Jones* (2013) 217 Cal.App.4th 735, 745 [after a guilty or no contest plea, a defendant may not challenge the court's jurisdiction to impose sentence but may still challenge the court's discretionary sentencing decision without a certificate of probable cause].)

### B.    *Analysis*

The People argue that when a defendant enters an open plea based on an indicated sentence, the defendant essentially agrees to the indicated sentence and a challenge to the sentence is an attack on the validity of the plea itself. Relying on *Shelton*, the People argue defendant's challenge to the trial court's exercise of its sentencing discretion "at its core" attacks the trial court's authority to impose the indicated sentence necessitating a certificate of probable cause. The People misapprehend the difference between a plea bargain and an indicated sentence, the relevant case law regarding section 1237.5, and the substance of defendant's appeal.

Only the prosecutor may negotiate a plea bargain on the state's behalf. (*People v. Segura* (2008) 44 Cal.4th 921, 930 (*Segura*).) The trial court thus may not engage in unlawful judicial plea bargaining. (*People v. Clancey* (2013) 56 Cal.4th 562, 572–574.) The trial court may, however, provide an indicated sentence that "represents the court's best judgment as to the appropriate punishment for this defendant and this offense, regardless of whether guilt is established by plea or at trial." (*Id*. at p. 576.) When a court gives an indicated sentence, "the court has merely disclosed to the parties at an early stage—and to the extent possible—what the court views, on the record then available, as the appropriate sentence so that each party may make an informed decision." (*Id*. at p. 575.) An "indicated sentence is not a promise that a particular sentence *will* ultimately be imposed at sentencing. Nor does it divest a trial court of its ability to

16.

exercise its discretion at the sentencing hearing, whether based on the evidence and argument presented by the parties or on a more careful and refined judgment as to the appropriate sentence." (*Id*. at p. 576.)

Here, the trial court's indicated sentence was not a promise to impose that sentence and defendant did not expressly or impliedly promise to accept any sentence within the court's indicated sentence. On the contrary, defendant's subsequent arguments for a lesser sentence evinced an understanding the court may impose a sentence different than indicated and would still exercise its sentencing discretion after considering further evidence and argument.

The facts in this case are like what occurred in *Cole*. In *Cole*, the defendant did not have a plea bargain with the prosecution but instead entered a plea of no contest under a "negotiated disposition." (*Cole*, *supra*, 88 Cal.App.4th at p. 858.) Specifically, the defendant pled no contest to the charges and the trial court, with the prosecutor's implicit concurrence, promised to impose concurrent sentences and thereby reduce his sentence exposure to 25 years to life. (*Ibid*.) At a subsequent sentencing hearing, the trial court considered the defendant's sentencing motion, the probation report, and heard victim impact statements and arguments from both sides. (*Id*. at p. 856.) The defendant challenged his resulting sentence of 25 years to life on four grounds, including that the sentence constituted cruel and unusual punishment, and the trial court abused its discretion by declining to strike one of his prior strike convictions. (*Id*. at p. 854.) The *Cole* court concluded the defendant could not argue his sentence was unconstitutional because this constituted a challenge to the validity of his plea to a negotiated maximum sentence. (*Id*. at pp. 867–868.) However, "when the plea agreement contemplates an adversary hearing on the discretionary question of whether to impose the maximum permissible sentence," the defendant retains the right to challenge how the court exercises its discretion in selecting a sentence. (*Id*. at p. 871.) Section 1237.5 thus did not apply to

17.

defendant's claim the trial court abused its discretion in declining to strike his prior convictions. (*Cole*, at p. 872.)

Here, as in *Cole*, there was no plea bargain between defendant and the prosecution. Defendant pled no contest to all charges in the information and admitted the enhancement allegation and received no promised benefit for doing so from the prosecution. (See *Segura*, *supra*, 44 Cal.4th at p. 930 [in a plea bargain, a defendant pleads guilty or no contest "in order to obtain a reciprocal benefit" from the prosecution].) Defendant's maximum sentence exposure was calculated to be 120 years four months to life, but the trial court gave an indicated sentence of 52 years eight months to life and the prosecution made no objection or argument against this sentence on the record. Although the court stated the unlikeliness of a lesser sentence, the record reflects both sides understood further adversary proceedings would be held regarding how the court should exercise its sentencing discretion. Specifically, the matter was referred for preparation of a presentence investigation report and continued to a sentencing hearing. Prior to the hearing, defendant filed a sentencing brief and statement in mitigation asking the court to exercise its discretion to impose the low term and concurrent sentences. At the sentencing hearing, the court reviewed the presentence report and heard victim impact statements. Both sides also made arguments regarding the mitigating factors with defense counsel asking the court to exercise its discretion in deciding "how to craft a sentence in this case." As in *Cole*, "where adversary proceedings *are* held on the question of punishment, the rationale for limiting the right to appeal under section 1237.5 does not apply." (*Cole*, *supra*, 88 Cal.App.4th at p. 871.)

Citing *Panizzon*, the People argue defendant in entering the plea based on the indicated sentence essentially agreed to the sentence and was required to obtain a certificate of probable cause to challenge the sentence as unlawful. The circumstances in *Panizzon* are inapposite. As previously discussed, "all the trial court did" in *Panizzon* was sentence the defendant "in accordance with the previously entered plea." (*Panizzon*,

18.

*supra*, 13 Cal.4th at p. 78; see also *Segura*, *supra*, 44 Cal.4th at p. 930 [the court's acceptance of a plea agreement binds the court and the parties to the agreement]; § 1192.5, subd. (b).) The *Panizzon* court found that where a defendant agrees to a specific sentence as part of a plea bargain and a separate adversary hearing is unnecessary, the right of appeal is subject to the requirements of section 1237.5 under the "implied" reasoning of *Ward*. (*Panizzon*, at p. 79.) In a footnote, the court recognized "that *Ward* was decided in the context of the former indeterminate sentencing laws. Under the present determinate sentencing scheme, a plea of guilty to a particular degree of a crime, *entered without an agreement as to the specific penalty to be imposed, may require a separate adversary hearing to determine the appropriate sentence*." (*Panizzon*, at p. 79, fn. 9, italics added.) As in *French*, defendant in this case did not agree to a specified sentence, and his plea "contemplated that the trial court would have discretion to impose any appropriate sentence up to the maximum" indicated sentence. (*People v. French*, *supra*, 43 Cal.4th at p. 49.) Because there was no agreed specific sentence and a separate adversary hearing was required to determine defendant's sentence, *Panizzon* does not compel defendant's compliance with section 1237.5. Furthermore, unlike the defendant in *Panizzon*, defendant did not waive the right to appeal his sentence as part of his plea.

Significantly, defendant does not challenge the trial court's authority to impose the selected sentence, but instead argues the court erred by imposing the middle term on three counts without making certain findings under section 1170. Contrary to the People's assertion, the substance of defendant's appeal is unlike the challenge in *Shelton* because he does not argue the court could not lawfully impose the indicated sentence. Pursuant to *Ward*, *Buttram* and *Panizzon*, defendant may challenge whether the court erred in selecting his sentence in postplea proceedings without obtaining a certificate of probable cause.

19.

## II. Challenge to Imposition of the Middle Terms

Defendant argues the trial court erroneously imposed the middle term on counts 6, 7 and 8 without expressly making a finding on whether his psychological trauma was a contributing factor to the offenses warranting imposition of the low term under section 1170, subdivision (b)(6)(A). Defendant claims the matter must be remanded for resentencing for the trial court to comply with section 1170, subdivision (b)(6).

### A. *Standard of Review*

While the trial court has broad discretion in selecting a sentence, the court's "sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "To prove an abuse of discretion, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] To meet this burden, the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' [Citation.] When 'the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.] If the record is silent, however, the defendant has failed to sustain his burden of proving error, and we affirm." (*People v. Lee* (2017) 16 Cal.App.5th 861, 866–867; see also *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1229.)

**B.**    *Amendments to Section 1170*

Effective January 1, 2022, more than a year before defendant's sentence, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) made the middle term of imprisonment the presumptive sentence.  (§ 1170, subd. (b)(1), as amended by Stats. 2021, ch. 731, § 1.3.)  Prior to Senate Bill 567, the trial court had the discretion to choose which of the three terms specified for an offense best served the interests of justice. (§ 1170, former subd. (b).)  Section 1170, subdivision (b)(1) now states "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term."

Also effective January 1, 2022, Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124) amended section 1170, subdivision (b)(6) to create a presumption in favor of the low term where one or more specified circumstances were "a contributing factor in the commission of the offense" unless "the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice."  (§ 1170, subd. (b)(6); *People v. Banner* (2022) 77 Cal.App.5th 226, 241 (*Banner*).)[7]  As relevant here, section 1170, subdivision (b)(6) identifies the following specified circumstances:  the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to,

---

[7]    Defendant refers only to Senate Bill 567.  "During the 2021–2022 legislative term, three bills proposing changes to section 1170 in a variety of ways were introduced.  They were Assembly Bill No. 124 (Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 719, § 2), and Senate Bill No. 567 … (Stats. 2021, ch. 731, § 1.3).  All three bills were passed by the Legislature in September 2021, and approved by the Governor and filed with the Secretary of State on October 8, 2021. Senate Bill No. 567 … bears the highest chapter number and is presumed to be the last of the three approved by the Governor.  (Gov. Code, § 9510.)  As such, Senate Bill No. 567 … prevails over Assembly Bill No. 124.  (Gov. Code, § 9605, subd. (b).)  To the extent there are conflicts between the three bills, Senate Bill No. 567 … takes precedence.  (*In re Thierry S.* (1977) 19 Cal.3d 727, 738–739.)  As to subdivision (b)(6)(A) of section 1170, however, the substantive language in Assembly Bill No. 124, Senate Bill No. 1540 …, and Senate Bill No. 567… are not in conflict."  (*Banner*, *supra*, 77 Cal.App.5th at p. 243, fn. 2 (conc. & dis. opn. of Detjen, A.P.J.).)

abuse, neglect, exploitation, or sexual violence," or the defendant "is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." A person is defined as a "youth" if he or she was under 26 years of age on the date the offense was committed. (§ 1016.7, subd. (b).) The trial court retains the discretion to impose the low term "even if there is no evidence" of the specified circumstances in subdivision (b)(6). (§ 1170, subd. (b)(7).) The court must set forth on the record the facts and reasons for the sentence imposed. (§ 1170, subd. (b)(5).)

### C.  *Analysis*

Defendant contends his "burden was simply to produce sufficient evidence to place the court on notice of: (1) his desire for a mitigated sentence under section 1170, subdivision (b)(6); and (2) his claim that mental health issues contributed to his offense conduct."[8] Defendant asserts once he met this burden, "the onus was on the trial court to determine whether [his] psychological trauma was indeed a contributing factor to his crime."

The low term is not the presumptive sentence in every case where the defendant asserts one of the specified circumstances applies. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) Imposition of the low term "becomes presumptive only after the sentencing court makes findings in addition to those supporting the jury's verdict [or the defendant's plea]. Under the amended statute, the low term is presumed only if the sentencing court first finds the defendant falls into one of the three special categories set forth in section 1170, subdivision (b)(6) and, second, finds that circumstance was a contributing factor in the commission of the offense. Thus, unlike the middle term, the lower term is presumed only after the court makes additional findings .…" (*People v.*

---

[8]     While defendant argued below that both his psychological trauma and youth were mitigating factors, defendant focuses on appeal on whether his psychological trauma warranted the low term presumption. We discuss youth as a mitigating factor as relevant to the discussion.

*Hilburn* (2023) 93 Cal.App.5th 189, 204–205 (*Hilburn*).)  The "sentencing court is tasked with assessing mitigating and aggravating factors to impose the middle term only if it first determines that the defendant qualifies for treatment under the provision …." (*Id*. at p. 205.)

"The statute is clear that youth (or one of the other two categories in [§ 1170, subd.] (b)(6)) must be a contributing factor to the offense in order to qualify for a presumption low term." (*Hilburn*, *supra*, 93 Cal.App.5th at p. 204, fn. 6.)  Mental illness alone does not qualify a defendant for the lower term presumption.  (*Banner*, *supra*, 77 Cal.App.5th at p. 241.)  "Psychological trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)." (*Ibid*.)

In *People v. Frederickson* (2023) 90 Cal.App.5th 984 (*Frederickson*), the defendant argued for the first time on appeal the trial court abused its discretion in failing to treat the low term as the presumptive sentence when she was 23 years old at the time of her offense.  The defendant argued nothing in the record showed the trial court made the "interests of justice" finding under section 1170, subdivision (b)(6) prior to imposing the middle term.  (*Frederickson*, at pp. 988–989.)  The Court of Appeal rejected the defendant's argument and held that "in order to trigger the presumption [of the low term], there must be some initial showing that the defendant's youth was a contributing factor, and *only then must the record affirmatively show compliance with the statute*." (*Id*. at p. 992, italics added.)

The *Frederickson* court looked at *People v. Bruhn* (1989) 210 Cal.App.3d 1195 to consider what initial showing would be sufficient to trigger the low term presumption. (*Frederickson*, *supra*, 90 Cal.App.5th at p. 990.)  In *Bruhn*, the Court of Appeal found the trial court failed to adequately consider the defendant's eligibility for federal custody commitment for treatment of convicted felons who suffer from problems related to

23.

combat service in Vietnam under a prior version of section 1170.9.[9] (*Bruhn*, at p. 1197.) To trigger section 1170.9, "the defendant must make an initial showing that he served in combat while a member of the United States Armed Forces and that he suffers from substance abuse or other psychological problems resulting from that service." (*Bruhn*, at p. 1199.) The record showed the defendant had used heroin and other drugs while serving in Vietnam, had difficulty functioning in society upon his return home, and had perpetrated the charged theft to secure basic necessities. (*Id*. at p. 1200.) Once the defendant made "a prima facie showing of eligibility" under section 1170.9, the trial court "should affirmatively indicate an exercise of discretion" under that statute. (*Bruhn*, at p. 1200.) Because the defendant did make an initial showing of eligibility, the Court of Appeal vacated his sentence and remanded for the trial court to resentence the defendant "in a manner demonstrating an informed exercise of discretion under section 1170.9." (*Id*. at pp. 1200–1201.)

The *Frederickson* court noted the contrast of *Bruhn* with *People v. Young* (1991) 228 Cal.App.3d 171. (*Frederickson*, *supra*, 90 Cal.App.5th at p. 991.) In *Young*, this court held the trial court was not obligated to consider the defendant for civil commitment under former Welfare and Institutions Code section 3051 where the record was insufficient to put the court on notice the defendant may be addicted or in danger of becoming addicted to drugs. Although the defendant in *Young* had used drugs in the past, the defendant made no mention of any current or past substance abuse problems, nor was there mention of the possibility of civil commitment at the sentencing hearing. (*Young*, at p. 184.) We found *Bruhn* "clearly distinguishable on its facts" because the defendant in

---

[9]     Under the current version of section 1170.9, the trial court "shall consider … as a factor in favor of granting probation" that the defendant is a veteran who "may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's service." (§ 1170.9, subds. (a)–(b)(1).)

*Bruhn* put forth evidence of his eligibility for federal custody commitment and the applicable statute, section 1170.9, was specifically mentioned at the defendant's sentencing.  (*Young*, at p. 186.)

The *Frederickson* court found this prior case law "does not clarify what initial showing would be sufficient to obligate a trial court to make an express finding regarding the Section 1170[, subdivision ](b)(6)(B) lower term presumption," but "suggests that an initial showing has been made when the record and/or arguments are sufficient to put a trial court on notice that a defendant's youth may have been a contributing factor in commission of the underlying offense."  (*Frederickson*, *supra*, 90 Cal.App.5th at pp. 993–994.)  In the case before it, the *Frederickson* court had "no occasion to decide the precise nature of the showing required" because the defendant had not argued for the low term presumption below and she conceded the record did not explicitly indicate her age was a contributing factor to commission of the offense.  (*Id*. at p. 994.)  Consequently, the trial court "was not required to make an express finding regarding the Section 1170[, subdivision ](b)(6)(B) presumption because nothing in the record shows [the defendant's] youth was a 'contributing factor' in the commission of the underlying offense."  (*Frederickson*, at p. 987.)

Defendant argues the *Frederickson* court gleaned from *Bruhn* and *Young* that a defendant satisfies his burden under section 1170, subdivision (b)(6) "by presenting evidence or argument 'sufficient to put a trial court on notice' " his psychological trauma " 'may have been a contributing factor' " to commission of the offense.  This misconstrues *Frederickson*.  The *Frederickson* court found the case law *suggests* this may constitute an initial showing, but expressly declined to determine the precise nature of the showing required.  We likewise need not determine the precise nature of the showing required because defendant in this case similarly failed to present evidence his psychological trauma was a contributing factor to commission of his offenses.

The record shows, and the People do not dispute, defendant has suffered psychological trauma. Defendant served in the military and deployed to Afghanistan from March 2009 to March 2010. While he was in a combat zone, defendant was near a blast that killed four people. After defendant was discharged, he was mugged, and pistol whipped causing him to lose consciousness. The social worker attested that defendant was exposed to multiple traumatic experiences while being raised in the foster care system, deployed to Afghanistan and upon discharge from active duty. The social worker further reported defendant has difficulty with decision-making processes especially under stress or duress after his traumatic experiences in the military and head injury from the assault. The record reflected defendant suffered from PTSD and other mental health issues, and he had engaged in counseling and educational groups to address his PTSD.

Conspicuously absent from the record though are facts or evidence defendant's psychological trauma was a contributing factor to commission of his offenses. Defendant's sentencing brief cited section 1170, subdivision (b)(6)(A), discussed his childhood trauma, military service, and mental health issues, but included only a bare assertion his trauma played a "substantial" role in commission of the current offenses. At the sentencing hearing, defense counsel asked the trial court to consider defendant's time in the military, service-related disabilities, age, and time in the foster care system, but counsel did not discuss how the trauma was a contributing factor to commission of the offenses. This omission was presumably because nothing supported such a finding. Furthermore, nothing in the probation officer's report showed a connection between defendant's psychological trauma and his offenses.

Defendant concedes he "made no direct showing that his psychological trauma contributed to his offense conduct," but argues he made this showing "inferentially." Defendant notes he had no juvenile record or adult convictions prior to his March 2009 deployment and his problems with the law began only after he returned in 2010. Defendant essentially claims the trial court should have inferred his psychological trauma

26.

was a contributing factor to his offenses based on the offenses' timing. The record reflects defendant was only 19 years old when he was deployed to Afghanistan and thus his lack of a criminal record before then may simply be attributable to insufficient time to realize his criminal potential. Defendant's argument bears little difference to the argument rejected in *Frederickson* that the defendant only had to show she was a youth at the time of her offenses to meet her burden of making an initial showing. Merely because defendant's criminal conduct was chronologically after his traumatic experiences does not mean his psychological trauma was a contributing factor to commission of his offenses without evidence of a connection between them.

Defendant also argues the evidence shows a causal relationship between his trauma and crimes because the social worker reported defendant had difficulty with decisionmaking resulting from his traumatic experiences and defendant self-reported his PTSD had led to aggressive behavior. Defendant does not adequately explain how this shows his trauma was a contributing factor to his prolonged sexual abuse of Susanna. We do not discern how this evinces a causal relationship between his psychological trauma and the sex offenses he committed.

While defendant presented evidence showing he experienced psychological trauma, defendant failed to make an initial showing that trauma was a contributing factor to commission of his offenses. In the absence of that showing, the trial court was not required to affirmatively show compliance with section 1170, subdivision (b)(6) or make express findings regarding the low term presumption. (*Frederickson*, *supra*, 90 Cal.App.5th at p. 987; *Hilburn*, *supra*, 93 Cal.App.5th at pp. 204–205.)

Defendant argues the record affirmatively shows the trial court did not consider his psychological trauma and the court's actions showed a misunderstanding of the relevant legal principles. We disagree. Section 1170, subdivision (b)(6) had been effective for more than a year before defendant's sentence. Defendant cited this statutory subdivision in his sentencing brief and specifically asked the court to consider his

27.

psychological trauma in selecting his sentence in the brief and at the sentencing hearing. The court acknowledged and considered defendant is a veteran and suffers from service-related disabilities in determining its indicated sentence. At sentencing, the court confirmed it considered the circumstances in mitigation including defendant's age and military service. The court reviewed and considered defendant's sentencing brief and the probation officer's report prior to pronouncing sentence. Nothing in the record shows the court was unaware of or misunderstood its statutory sentencing obligations. We presume the court knew and applied the correct law in the absence of evidence to the contrary. (*People v. Thomas* (2011) 52 Cal.4th 336, 361.)

We find no abuse of discretion in the trial court's imposition of the middle term on counts 6, 7 and 8 without evidence defendant's psychological trauma was a contributing factor to commission of his offenses.

## **DISPOSITION**

The judgment is affirmed.